## CARN v. ROYER ET AL.

1. **Husband and Wife:** LEASE OF FARM BY WIFE: FRAUD. Facts considered under which it was held that the leasing of a farm by a wife, and its cultivation by minor sons and hired labor, with some assistance from her husband, was not in fraud of her husband's creditors, and did not render the products of the farm subject to his debts.

*Appeal from Franklin District Court.*

TUESDAY, APRIL 19.

ACTION in equity to subject certain personal property to the payment of a judgment held by the plaintiff against the defendant M. G. Royer. Margaret J. Royer, wife of M. G. Royer, and George Beed are made defendants as claiming some interest in the property. The property consists of certain grain grown upon a farm leased by George Beed to Mrs. Royer. The plaintiff levied an execution upon the grain as belonging in equity to M. G. Royer, except so far as George Beed had an interest in the same for the security or payment

of his rent. He prays that the lien acquired by his levy be declared paramount to any interest of Mrs. Royer in the grain; that M. G. Royer's interest in the grain be defined, and that a receiver be appointed to take charge of the same. Mrs. Royer for answer denies that M. G. Royer has any interest in the grain. The court dismissed the plaintiff's petition and he appeals.

*Harriman & Gilman*, for appellant.

*McKenzie & Hemingway*, for appellee.

ADAMS, CH. J.—The plaintiff insists that, notwithstanding the grain was grown upon a farm leased to Mrs. Royer, she ought not to be allowed to hold the grain as against the plaintiff, who is a judgment creditor of her husband, because as he avers she took the lease as a mere fraudulent device to hinder and delay her husband's creditors.

The evidence shows that M. G. Royer was insolvent; that Beed refused to lease the farm to him because he was insolvent; that to enable the Royer family, however, to live upon and cultivate the farm he leased it to Mrs. Royer; that the work in carrying on the farm was done for the most part by three minor sons and a hired man; that M. G. Royer was absent a part of the time, but that when at home he exercised some superintendency in connection with his wife, and did chores about the house and farm; that the personal property upon the farm was, nominally at least, in the name of Mrs Royer; that it was formerly owned by M. G. Royer, but that he made at least a nominal sale of it to Beed, who sold it to Mrs. Royer, she giving Beed a chattel mortgage upon the same for the security of the purchase money.

Under the laws of Iowa a married woman may take a valid lease of a farm, and the products are not necessarily liable to be seized upon execution for the payment of her husband's debts. If she should cultivate the farm solely with her own

hands or by hired labor it is clear that the products would
not be liable.

On the other hand it seems to us that under some circum-
stances they might be liable. Any device whose object was
to enable a married woman to accumulate property in her
own name, through the labor of her insolvent husband, would
be looked upon with suspicion, and the circumstances we con-
ceive might be such as to evince an unmistakable attempt
to defraud his creditors. But the mere fact that an insolvent
man performs labor upon a farm owned or hired by his wife
would not necessarily evince such attempt. *Webster v. Hild-
worth*, 33 Vt., 456; *Gage v. Dauchey*, 34 N. Y., 293; *Mc-
Intyre v. Knowlton*, 6 Allen 566; *Dean v. Bailey*, 50 Ill.,
484; *George v. Rundson*, 15 Cal., 327; *Patterson v. Spear-
man*, 37 Iowa, 36. It is not only a man's right, but his
duty, to provide himself with food and clothing, and if he is
a married man to provide his wife with food and clothing.
It is for this reason that the law allows certain exemptions.
Where, therefore, an insolvent man performs labor upon a
farm owned or hired by his wife, and the design and result
of the labor are merely to furnish reasonable family support,
we see nothing in such fact alone to evince an intention to
defraud his creditors. Nor would the case be different if the
labor was performed by minor sons.

The alleged interest of M. G. Royer in the grain in ques-
tion was estimated at somewhat less than six hundred dollars.
What expenses were to come out of it the evidence does not
show. This grain was the result to some extent of the labor
of the hired man, and he was to be paid in some way. It was
the result also to some extent of the use of the personal prop-
erty upon the farm, but this property Mrs. Royer had bought
upon credit, and she owed interest upon the purchase-money.
Besides it appears from the evidence that the Royer family
dependent upon the products of the farm for support was a
large one. If we understand the evidence there were not
less than six minor children.

Carn v. Royer.

Now if Mrs. Royer, by assuming the responsibility of taking a lease of. the farm, and of hiring a .man to assist in its cultivation; if by her own superintendence and labor and the labor of her minor sons, with such aid as her husband gave, which does not appear to have been much, was able merely to furnish her family with reasonable support for the current year, we see nothing in the transaction which would justify us in saying that her design was to defraud her husband's creditors, and that such would be the result if equity does not relieve.

But it is said that so far as the grain was the result of the use of the personal property upon the farm, the grain must be regarded as belonging to her husband. It is said that the property thus used was his property; that it originally belonged to him, and that the sale by him was made to Beed with the design that he should sell to her, and that she paid nothing and had nothing which she could' pay.

The fact appears to be that, prior to the sale of the property to Beed, it was mortgaged by M. G. Royer to Beed for more than it was worth; that he took the property at its value and applied it upon the debt, but as the Royers needed it to enable them profitably to carry on the farm, Beed sold the property to Mrs. Royer.

Beed having taken it at its value and applied it upon the debt due him the creditors of M. G. Royer have no ground of complaint. The property became Beed's in good faith, and it is not material that he intended at the time he took it to sell it to Mrs. Royer.

In conclusion we have to say that we fail to discover in the purchase of this property by Mrs. Royer, or in hiring the farm, or in receiving her husband's labor upon it, to the small extent which she did, an intention to defraud, and in our opinion the judgment of the District Court must be

AFFIRMED. ,