HENRY CARSE, Appellant, v. J. M. RETICKER AND A. C.
RETICKER.

**Fraudulent Conveyance:** HUSBAND AND WIFE. A husband had a con-
1  tract with an Illinois county to board its prisoners. Upon con-
   sulting with plaintiff, for whom the wife was working, husband
2  and wife agreed that she should take said contract and take its
   profits. They were all placed to her credit within ninety days
3  after they accrued. The husband became indebted to plaintiff.
   The wife bought Iowa land and paid for it with said profits. *Held,*
4  plaintiff cannot subject said land to his claim against the husband.
   Neither Iowa nor Illinois law makes said transfer of profits illegal.
5  If it were, the profits remained the property of the husband, and
   creditors cannot question his gift of them, made within ninety
   days after earning them.

*Appeal from Montgomery District Court.*—HON. H. M.
TOWNER, Judge.

THURSDAY, MAY 23, 1895.

Suit in equity to have certain lands in the name of
A. C. Reticker decreed to belong to J. M. Reticker, and
to subject them to the payment of plaintiff's judgment.
From a decree dismissing plaintiff's petition, he
appeals.—*Affirmed.*

*Smith McPherson* and *T. J. Hysham* for appellant.

*J. M. Junkin* for appellees.

Deemer, J.—Prior to the year 1879 the defendant
J. M. Reticker was a member of a firm doing business
in Rock Island, Ill., under the name of Kelley & Ret-

icker. During that year the firm failed in business, and Reticker became insolvent. Reticker, however, paid about half of the indebtedness of the firm, as we understand it, before the end of the year. In October of that year the plaintiff proposed to Reticker the feasibility of forming a partnership to engage in the boot and shoe business. Reticker suggested that some debts of the old firm of Kelley & Reticker were unpaid, and that he could not well engage in business in his own name. It was then proposed that a copartnership be formed, using the name of Reticker's wife, A. C. Reticker, as a member of the firm, and accordingly the copartnership of Carse & Reticker was formed. This firm continued in business until February, 1884, when plaintiff purchased Reticker's interest in the business, including the book accounts. At that time J. M. Reticker was owing the firm quite a large amount of money. This indebtedness is the basis of plaintiff's judgment against J. M. Reticker, which was first obtained in Illinois in April, 1890, and afterwards, in the district court of Montgomery county, on the Illinois judgment in October, 1891. October 27, 1884, two hundred and eighty acres of land situated in Montgomery county were deeded to the defendant A. C. Reticker, and it is claimed that J. M. Reticker furnished the money which formed the consideration for the purchase of the land, and that the title was taken in the name of the wife for the purpose of defrauding his creditors, among whom was the plaintiff. This is denied by both defendants. They insist that the land was purchased by A. C. Reticker with money accumulated by her from her own earnings, and that J. M. Reticker has no interest therein.

The question presented by the appeal is largely one of fact, and it is not important that we do more than set forth, in a general way, our findings. It appears

from the testimony that in the year 1882 defendant J. M. Reticker was elected sheriff of Rock Island county, Ill., and that he held office until December, 1886. He was elected during the existence of the firm of Carse & Reticker, and at the time of his election he, with his wife, was living over the store in which the firm did business. Mrs. Reticker was employed in the store at a salary of five dollars per week. Soon after Reticker assumed the duties of his office, he discovered that there were large profits to be made in boarding the prisoners at the jail, of whom he had charge,—the county paying fifty cents per day for each prisoner,—and he proposed to his wife that they move to the jail and undertake this work. She disliked the proposed arrangement, and refused to go, whereupon the husband proposed to her that if she would move into the jail, and undertake the preparation of meals for the inmates, she should have, as her own, all the profits made out of it, and that he would relinquish all claim thereto. Plaintiff was consulted with reference to the matter, as he ought to have been, and consented to and advised the arrangement. Mrs. Reticker accepted the proposition, moved to the jail, and, during the remainder of her husband's official term, superintended the boarding department of the jail. An account was kept of the number of persons boarded, upon which the county settled. This account was charged with the cost of food and provisions and supplies, and the balance, as drawn from the county every ninety days, was placed to the credit of A. C. Reticker. The total profits made in the business, as shown by the books, were something like seven thousand dollars. The Iowa land, as has been noticed, was purchased in October, 1884, in the name of A. C. Reticker. It was purchased largely on credit,—Mrs. Reticker executing **twelve** notes, of about five hundred dollars each, for the

greater part of the purchase price. It is claimed that the amount paid in cash on the land, and the payments made upon the notes, came from the profits arising from the board of the prisoners.

It is insisted on the part of appellant,—*First*, that no such agreement as claimed was ever made between these defendants; *second*, that, if made, it was wholly without consideration, and void; and *third*, if made at all, it was executed in the state of Illinois, and was void by the statutes of that state.

That there are some suspicious circumstances disclosed by the testimony with reference to the conduct of the parties under this alleged agreement is true, yet it is clearly and definitely testified to by each of the defendants, and is not denied by the plaintiff, although it is shown that he had knowledge thereof at the time it was made. The parties are husband and wife; and while this relationship presents an opportunity for the perpetration of fraud, which is too frequently taken advantage of, yet every one is aware that legitimate business transactions between husband and wife are seldom, if ever, carried on according to strict business principles. There is really nothing in the evidence which cannot be explained upon a theory perfectly consistent with honesty and good faith, and we are not disposed to impeach the transaction. For a case in point, see *Gilbert v. Glenny*, 75 Iowa, 513.

It is further claimed that the agreement was without consideration, because it was the marital duty of A. C. Reticker to perform the services. We cannot accede to this doctrine. That it is the duty of the wife, as "helpmeet," to attend, without compensation, to all the ordinary household duties, and labor faithfully to advance her husband's interests, is true. Yet it certainly is not her duty, unless she desires to incur it, to undertake the boarding of a large

number of prisoners who may for the time being come under the charge of her husband. These defendants had the undoubted right to contract with each other with reference to the board to be furnished the inmates of the jail, the same as if the marital relation did not exist. J. M. Reticker had the contract with the county to furnish the board, and could sublet it to whomsoever he wished,—even to his wife, if she saw fit to engage in the work. *Gilbert v. Glenny*, 75 Iowa, 513; *Mewhirter v. Hatten*, 42 Iowa, 288; *Hoag v. Martin*, 80 Iowa, 714. If there had been no relinquishment by the husband to the earnings of the wife accumulated while engaged in a separate business for herself, the rule might be different; but here, as we have seen, the husband expressly and completely abandoned all claim thereto.

Lastly, it is insisted that, as the contract was made in Illinois, its validity is to be determined by the laws of that state. Plaintiff introduced upon the trial certain sections of the statutes of that state which he claims are applicable to the case. One of these sections provides that "neither husband or wife shall be entitled to receive any compensation for labor performed or services rendered for the other, whether in the management of property or otherwise." Rev. St. 1881, page 791, section 8. Another confers upon the wife the right to acquire and hold property, the same as her husband, but provides that no transfer of goods and chattels between them shall be valid, unless evidenced by writing and duly recorded. Even if applicable we do not see the force of these statutes in the case at bar. The first is merely declaratory of the common law, and, under it, it was held by the supreme court of Illinois, in the case of *Hazelbaker v. Goodfellow*, 64 Ill. 241, that: "If, with the assent of the husband, the wife were to carry on any kind of business,

.she would be entitled to the profits, if it were bona fide hers, and there was no intent to shield the husband's property from his creditors. So no reason is perceived why the husband might not, if the transaction was not tainted with fraud, permit his wife to raise and sell grain, stock, and other farm products, and receive the profits." As to the plaintiff in this case, who was perfectly familiar with the transaction, and who, as the evidence shows, was consulted, and advised it, there was no fraud. But, aside from this decision, what is there in the statute quoted which inhibits the wife from claiming the profits arising from the boarding of the prisoners, where the husband has relinquished all claim thereto? We see nothing. True, the services were, in a sense, rendered for the husband, but not as such. As we have seen, no duty rested upon her to perform them. She received the profits resulting, from time to time, as they were earned, directly from the county, and, according to the testimony, held them as her separate property. She is not seeking to recover compensation for labor performed or services rendered for her husband. The case is much like *Riley v. Mitchell,* 29 N. W. Rep. (Minn.) 588. The case of *Peterson v. Mulford,* 36 N. J. Law, 481, is, in principle, quite like the case at bar. In this case it is said: "There can be no question but that the husband is entitled to the services of his wife, if he claims them, and also to the proceeds of her labor, unless he permits her to labor for her own account, or, after she has earned or received the proceeds, gives them to her, or allows her to appropriate them to her own use. This is clear by the common law, and is recognized in all the cases in this state where the question has been considered." On page 489 of the same case it is said that if the husband permits the wife to

labor for herself, or, after having labored, makes her a gift of her earnings, it is valid, even as against credit-ors, for the reason that there is no law that requires a husband to cause his wife and children to labor for his creditors. See, also, *Cubberly v. Scott*, 98 Ill. 39. The other statute referred to has no possible application to this case.

Another view of the case is fatal to appellant's claim. If it be conceded that the money earned by the wife in the keeping of boarders belonged to the hus-band, by reason of the marital relation existing between them and because it was her personal earnings, then he had the right to give these earnings to his wife, and she could use them as she saw fit. They were all collected and placed to her credit, according to the testimony, within ninety days from the time they were earned, and were therefore exempt from execution, and creditors have no right to complain of the disposition made of them. This is undoubtedly the rule in this state (*Robb v. Brewer*, 60 Iowa, 539), and we are not advised of anything pro-hibiting it in the statute of Illinois. From what we have said, it is apparent that plaintiff is not entitled to the relief asked, and the decree is *affirmed*.