THE McCORMICK HARVESTING MACHINE COMPANY, Appellant, v. WILLIAM POUDER, H. MENDEL, Garnishee, AND POUDER & POUDER, Interveners.

123    17
122    621
123    17
128    664
123    17
134    319

**Fraudulent Conveyances:** TRANSFER TO THE WIFE. A husband who allows his wife to be substituted in his place as lessee of a farm does not thereby transfer to her any property in fraud of creditors, there being no evidence that such leasehold interest had any pecuniary value at the time.

**Same.** Where the wife is substituted for the husband as lessee of a farm and it is not shown that the transaction was a scheme to

hide the husband's real interest therein, the subsequent profits accruing from the lease cannot be reached by creditors of the husband although he continues to assist in creating the same.

**Fraudulent Conveyance:** FUTURE SUPPORT: EVIDENCE. Evidence
3    considered and held insufficient to show that a transfer by the husband, who was a joint tenant with his son, of his interest in the lease to his wife was in fraud of creditors because made in consideration of future support.

**Practice:** APPEAL. The report of a referee containing his finding of
4    facts may be included in the record on appeal, although the case is in equity and triable *de novo*.

*Appeal from Pottawatamie District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, JANUARY 26, 1904.

THE plaintiff, holding two judgments against the defendant, William Pouder, caused execution to issue on its judgments and notice of garnishment to be served on the garnishee, H. Mendel, who had in his possession the proceeds of an auction sale of personal property, consisting of live stock and farm produce and implements, which plaintiff claimed was the property of said defendants. Pouder & Pouder, an alleged partnership composed of the wife and son of the defendant, intervened, claiming to have been the owners of the property sold, and therefore entitled to the proceeds in the garnishee's hands. The cause was transferred to the equity docket and under an order of reference trial was had before a referee, who reported findings of fact and conclusions of law recommending a decree in behalf of interveners. Exceptions were filed to the report, which were overruled, and a decree was entered as recommended. The plaintiff appeals.—*Affirmed.*

*Flickinger Bros.* for appellant.

*H. L. Robertson* for appellee.

McCLAIN, J.—In August, 1896, one Matson executed to defendant William Pouder and his son Harry Pouder, a

lease of a farm for five years.  The defendant and his son were not named in this lease as partners, but were referred to therein as parties of the second part, and signed the same individually.  Defendant and his wife and the son took pos- session of the premises about March 1, 1897, and not long afterwards some question was raised between defendant and Matson as to whether defendant had outstanding debts which might be enforced against such personal property as had been taken upon the premises.  Matson was then advised, appar- ently for the first time, that defendant was indebted and practically insolvent, and about the same time, as it appears, Mrs. E. A. Pouder, the wife of the defendant, first learned that the lease was in the name of her husband and son.  She protested that the personal property taken by the family upon the premises belonged to her, and not to her husband, and objected to having the lease in his name.  Thereupon it was mutually agreed by all parties concerned that the lease should be surrendered and a new one entered into, to which Mrs. E. A. Pouder and Harry Pouder should be named as parties of the second part, and such a lease was duly executed in May, 1897, the former lease being destroyed.  The de- fendant continued to take an active part in the work involved in carrying on the farm; but it is claimed that the son was the principal manager.  However this may be, the family together occupied the premises until November, 1901, when Matson accepted a surrender of the remainder of the term of the lease, and a public sale was had of the live stock and pro- duce on the farm in which Matson was, under the provisions of the lease, the owner of a half interest.  Mendel, the gar- nishee, was the clerk at this sale, and was garnished under plaintiff's executions for the half of the proceeds belonging, as plaintiff claims, to defendant, but, as interveners claim, to them.  The contention of plaintiff is that the change of the lease was for the purpose of putting the property of defend- beyond the reach of his creditors, and the action is practi- cally one to set aside a conveyance by him of his property as in fraud of plaintiff's claims.  At the time defendant, with

his wife and son, took possession of Matson's farm, some live stock, grain, and implements were taken upon the premises, consisting in part of animals and grain which defendant claims to have held as exempt from execution, and other animals and certain implements which Mrs. Pouder claims to have owned by reason of a transfer to her of such property or other property for which it was taken in exchange, by a bill of sale executed by her husband to her in 1888. Soon thereafter the Pouders acquired a half interest in other animals on the premises which had belonged to Matson, for the half interest in which Mrs. Pouder and the son executed their note, subsequently paid out of the proceeds of the farm. This arrangement for a joint ownership of the stock with Matson was made under an agreement in the lease by which the landlord and the tenants were to be jointly interested in the raising of stock and in the proceeds of the farm. It is contended that all the live stock, implements, and grain taken upon the farm by the Pouders in fact belonged to the defendant, and to negative the apparent effect of the bill of sale by defendant to his wife in 1888 under which she claims to have been the owner of all the stock— save the animals which defendant claimed as exempt from execution, it is claimed that this bill of sale, which was duly executed and recorded, was in fact itself fraudulent and void as against the plaintiff, whose claims against the defendant, subsequently merged in judgments, were already in existence in 1885. In answer to the suggestion that any effort on the part of plaintiff to have this bill of sale declared to be fraudulent is barred by the statute of limitations, it is responded that the statute of limitations has not been raised. But the fact is that nowhere in the pleadings is there any allegation that this bill of sale was fraudulent, nor is there any prayer for relief as against it. Therefore it is plain that there was no occasion to plead the statute of limitations. The fact is that this bill of sale is nowhere referred to or attacked in the pleadings, and, so far as we can see, all the evidence relating to its invalidity was incom-

petent. However this may be, it seems to have been sup-
ported on a good consideration, and no fraudulent purpose
in executing it has been shown. We must assume, therefore,
that Mrs. Pouder was the real owner of the personal prop-
erty taken upon the Matson farm when the family took pos-
session thereof, save certain of the animals and the grain
conceded to have been the property of defendant but exempt
to him from execution.

The real question is whether the surrender of the first
lease and the execution of a new lease to Mrs. Pouder and
the son was a scheme by which it was sought to put the pro-
ceeds of the farm, which otherwise would have
belonged to defendant, beyond the reach of his
creditors, by having the lease made ostensibly
to the wife and son, but really for the benefit of defendant.
Here it must be observed as an important fact that the first
lease was made to defendant and his son jointly. The son
was not then of age, but he had for two or three years been
absent from home, working for himself, by the consent of
his parents, and was in fact emancipated and capable of en-
tering into a contract, and there is no question but that the
purpose in having him join with his father in the lease was
that he was to take an active interest in the business of car-
rying on the farm and render personal services in doing so.
There seems to be no ground for contending that he was in
any view of the case not entitled to one-half of the share in
the profits which should accrue to his father and himself in
carrying on the farm. But with reference to the substitu-
tion of Mrs. Pouder for her husband as one of the joint ten-
ants, it must be observed that this change, if valid, and not
merely collusive, did not result in the transfer of any prop-
erty of ascertainable value from the husband to the wife.
There is no evidence from which it can be determined that
at the time of the transfer the interest of the tenants under
the lease had a pecuniary value, nor that any property there-
by passed to Mrs. Pouder which would have been subject to
execution at that time under a judgment against her husband.

*1. FRAUDULENT conveyances; transfer to wife.*

It is true that during the continuance of the lease considerable profits resulted to the tenants, but these profits were at the time of the surrender of the first lease wholly problematical and speculative, and cannot be taken into account in determining the money value of the tenants' rights under the first lease when it was surrendered. The defendant did not, therefore, by the act of agreeing to the surrender of this lease and consenting to the execution of a new lease to his wife and son, transfer to his wife, substituted for himself as tenant, any property in fraud of his creditors.

The subsequent profits accruing to the tenants under the lease belonged, therefore, to them, and did not become subject to seizure for the defendant's debts, unless the transfer 2. SAME.     was merely a collusive and fraudulent scheme to make it appear that the wife, instead of the husband, was the joint tenant with the son, while the husband remained in reality one of the tenants. On this question there is considerable evidence one way and the other. The defendant did continue by his labor to contribute to the carrying on of the enterprise. But if in fact he saw fit to do just what he did for the purpose of assisting his wife and son in carrying on the farm and realizing profits therefrom, this would not render such profits subject to any extent to the payment of his debts. That a husband can render his services to his wife in the management of property belonging to her without rendering such property subject to the claims of his creditors is well settled in this state. *King v. Wells,* 106 Iowa, 649; *Russell v. Long,* 52 Iowa, 250; *Carse v. Reticker,* 95 Iowa, 25; *Patterson v. Johnson,* 59 Iowa, 398; *Deere v. Boone,* 108 Iowa, 281. Counsel for appellant cite other cases, in which it is held that, under the facts involved in those cases, the attempt of the husband to carry on business apparently in the name of the wife, but really in his own interest, was so far fraudulent as to subject the property accumulated to his debts; but those cases are sufficiently referred to and distinguished in the cases which we have cited. We do not find any such evidence of a fraudulent purpose in this case as to jus-

tify us in holding that the profits of this farm belonged to the husband. The proceeds, so far as they have been realized, have been invested by the wife and son in their own names in another state, and it does not appear that the husband has any real interest therein.

A claim is made in argument that the surrender of the lease by the defendant was in consideration of an agreement with the wife and son for future support, and that, therefore, 3. FRAUDULENT this agreement was fraudulent as to creditors, conveyance: future support: on the principle, well recognized, that a debtor evidence. cannot, as against his creditors, provide for future support by the transfer of his property. But the evidence does not support any such claim. It does appear that the defendant had assurances, when the first lease was surrendered and the new lease was taken, that he would be provided for. These assurances, however, were given by the son, and, as we have already indicated, the son had, by the first lease, acquired a half interest in the business, and he acquired no greater interest by reason of any reliance on these promises on the part of the father. The inference we draw from the evidence is that defendant was reluctant to consent that his wife should be substituted for himself, and was perhaps induced to give his consent by the son's assurances. However this may be, the agreement for support was too indefinite and uncertain to be treated as any part of the consideration for the surrender of the first lease. The support which defendant had received from his wife and son has been no more than that reasonably earned by the services which defendant has rendered to them in carrying on the business.

A motion is submitted with the case to strike from appellee's amended abstract the report of the referee, which is set out therein. Such report is a part of the record of the 4. PRACTICE: case, and we see no reason why it should not appeal. be submitted to us. We are, it is true, required to try the case *de novo*, but we are certainly entitled to any beneficial use which we may be able to make of findings of fact by the referee. Such findings are, of course, not con-

clusive upon us, and we have examined the record and drawn our own conclusions from the evidence. But we are not precluded by any rule of practice which has been called to our attention from knowing what the report of the referee was, or making such use of it as we see fit in the marshaling of facts. We have in this case, however, followed our own judgment in determining what portions of the evidence were material, and in passing upon its credibility.

The decree of the lower court is therefore AFFIRMED.