Cedelia Bartholomew, Appellee, v. W. H. Adams, Executor of the Will of J. J. Mish, Deceased, Appellant.

**Estates of decedents:** CLAIMS: IMPLIED CONTRACTS: EVIDENCE. In seeking to recover against an estate on an implied contract for services rendered deceased, the facts justifying the implication must be well established and nothing left to mere conjecture. In the instant case, the evidence is held insufficient to justify the award in favor of plaintiff for care, nursing and attention rendered deceased, and election to accept a reduced amount is given.

**Married women:** INDEPENDENT OCCUPATION: RECOVERY FOR SERVICES. A married woman may keep boarders as an independent occupation, and may recover on her own account for services rendered them, in their care and nursing.

*Appeal from Greene District Court.*—Hon. F. M. Powers, Judge.

Friday, July 2, 1909.

Appeal by the defendant from the allowance of a claim for personal services rendered the deceased in his lifetime.—*Reversed.*

*Wilson & Albert,* for appellant.

*J. A. Henderson,* for appellee.

Weaver, J.—The testator, J. J. Mish, died February 28, 1906, and the defendant is the duly qualified executor

of his will. On September 14, 1906, the plaintiff filed a claim against the estate stated as follows:

"Cedelia Bartholomew against W. H. Adams, as Executor of the Estate of J. J. Mish, Deceased.

W. H. Adams, as Executor of the Estate of J. J. Mish, Dec'd, Dr.

1904.

Dec. 26. To services rendered deceased in care, nursing and attention from July 8, 1904, to Dec. 26, 1904, a period of 171 days, at $2.50 per day......$ 427 50

1906.

Feb. 28. To care, nursing and attention for deceased from Dec. 26, 1904, to Feb. 28, 1906, night and day, for a period of 429 days, at $7.50 per calendar day ................. 3,217 50

Feb. 28. To washing for deceased from July 8, 1904, to Feb. 28, 1906, 86 weeks, at $2 per week.......... 172 00

Feb. 28. To ironing laundry for deceased, from July 8, 1904, to Feb. 28, 1906, a period of 86 weeks at $1 per week . . ....................... 86 00

Feb. 28. To mending for deceased from July 8, 1904, to Feb. 28, 1906, at 50 cents per week ................ 43 00

Total..................$3,946 00"

On trial to a jury a verdict was returned in plaintiff's favor for $3,000 and from the allowance of the claim for the amount thus found the defendant takes this appeal.

A repeated reading of the entire record impresses us strongly with the conclusion that, assuming the plaintiff

to be entitled to recover at ,all, the amount of the allow-
ance made by the trial court is grossly ex-

1. ESTATES OF
DECEDENTS:
claims: implied
contracts:
evidence.

orbitant. In July, 1904, the plaintiff and
deceased were both residents of Grand Junc-
tion, Iowa. Plaintiff appears to have kept
boarders to some extent, and to have had the chief care
and management of her household, having in her family a
young daughter, two sons, and her husband. She had
never been employed as a nurse, but had had such experi-
ence as was obtained in caring for cases of sickness occur-
ring among her own family relatives. The deceased had
been in business in Grand Junction, but, failing in health,
closed out the business, and, being a widower without chil-
dren with whom to make his home, went to reside as a
boarder with plaintiff. There is no attempt on the part
of the plaintiff to show the agreement or understanding
under which these relations were begun, but there is evi-
dence indirectly tending to show that the deceased was to
pay board at the rate of $5 per week, and as no charge
for board is included in the claim now in dispute, we may
fairly assume that deceased made full payment at that or
such other rate as may have been agreed upon during the
remainder of his life. A few months after deceased be-
gan boarding with plaintiff, she removed to California,
and he moved with her, and continued to make his home in
her family until his death. He was suffering from some
form of paralysis, which later assumed a more aggravated
form, necessitating undoubtedly no little labor and care to
keep him and attend to his wants. During all this time
the plaintiff employed no servant, nurse, or other help than
such as she received from other members of the family.
She kept two other boarders, and her daughter attended
school. With such help as her daughter could give she did
her own cooking and laundry work, including some for her
boarders. The older son, testifying as a witness, does not
claim to have rendered any material assistance, but says

"mother did all the nursing herself." He also says: "Mother did all the housework, with the aid of my sister, who is thirteen years old." The younger son, speaking of the service rendered by himself, says, "I was out of work about three months. My mother, in the presence of Mish, asked me to stay in the room with him nights. Mish said us folks took good care of him, and he did not like to be among strangers. There was nothing said about me receiving compensation. . . . I stayed with Mish Saturday afternoons, Sundays, and at night. I slept in his room, bathed him, and helped him out of bed. . . . The reason I stayed at home while we lived on San Pablo Avenue was because I didn't have a job. While Mish was worse at Berkeley, mother had help enough without me. I went back to work because I needed the money. Am a machinist part of the time, and a carpenter part of the time, and worked eight hours per day." Aside from the testimony of the plaintiff herself, whose competency to testify thereto is, to say the least, very doubtful, the value of the service rendered by her is sought to be sustained principally by evidence that a trained nurse called to perform the service stated in the hypothetical questions put by her counsel, would reasonably expect to receive from $4 to $8 per day. In our judgment the simple reading of the testimony makes it too clear for argument that the verdict returned has no adequate support in the record. To say nothing of the strange reticence which characterizes plaintiff's case as to the terms, if any, on which this service was rendered; of the failure to indicate whether any payment was ever made; the acceptance of payment for board, leaving this far larger item unsettled and (so far as the record shows) unmentioned—proof of the charges made or estimated by professional nurses affords a very unsatisfactory criterion for the compensation of a boarding house keeper who, in addition to the labor and cares attendant upon keeping the

house and doing the work for a family of seven or eight people, undertakes the charge of a sick boarder.

The sum allowed by the jury, in addition to the board of the deceased, is in round numbers $5 per day or $35 per week for the entire period from his advent as a boarder in plaintiff's home until his decease. That he understood or had reason to believe, that any such bill or demand was accumulating against him is scarcely conceivable. It may be true that plaintiff is not required to negative payment (a question we do not here pass upon); but, in order to recover upon an alleged implied contract with a person since deceased, it is the only just and safe rule to require that facts justifying the implication be well established, and nothing be left to mere conjecture. Without in any manner disparaging the present case, it is nevertheless unfortunately true that not infrequently claims which would never have been made against a party living are asserted against his estate when death has closed his mouth to speak in his own defense, and services for which a modest compensation would have been perfectly satisfactory if paid in his lifetime suddenly acquire added value to the mind of the creditor when payment is to be made by an administrator; and, in view of this tendency, and of the difficulty under which the representative of the estate must labor to defend against such demands, it is proper for the courts to require the showing for their allowance to be at least reasonably satisfactory. The case before us does not present such a record.

II. The appellant contends that the plaintiff as a married woman can not maintain this action. We think the objection is not well taken. The plaintiff's husband is a mechanic, while she takes in a few board-

2. MARRIED WOMEN: independent occupation: recovery for services.

ers. In this work she says her husband has no part, and we have on several occasions held that the keeping of boarders is, or may be, an independent occupation in which a married woman

may engage on her own account. *Gilbert v. Glenny,* 75 Iowa, 513; *Carse v. Reticker,* 95 Iowa, 25. "A married woman has a right to contract for her own services (Code, section 3164), and may receive the wages of her personal labor, and maintain action therefore in her own name." Code, section 3164; *Lindsey v. Lindsey,* 116 Iowa, 480. The case of *McClintic v. McClintic,* 111 Iowa, 615, relied upon by appellant is not inconsistent with this holding.

Though objection was made, we are unable from the record to ascertain to what extent the appellant now relies upon Code, section 3604, for the exclusion of the testimony of the plaintiff as a witness. The briefs of counsel touch upon the subject only in an incidental way, and we shall therefore not attempt any review of that feature of the record.

For the reasons we have stated, the judgment of the district court can not be allowed to stand. As, however, the services rendered by appellee were doubtless of material value in excess of the ordinary compensation for board furnished, we are disposed to say that, if she elects to accept a recovery of $10 per week for the period of eighty-six weeks, or $860, with interest at six percent from the date of filing her claim, the judgment in her favor will be affirmed for that amount, and for an equal division of the costs in this court. On failure to indicate such election within thirty days from the filing of this opinion, the judgment will stand reversed, and cause remanded for a new trial and costs taxed to appellee.—*Reversed.*