In relation to the ESTATE of William F. MARTIN, Deceased.

John W. MARTIN and Colleen McCreery, Objectors-Appellants,

v.

Elmer MERTZ, Executor, and Isal Barber and Guy A. Barber, Claimants, Appellees.

No. 52792.

Supreme Court of Iowa.

Jan. 9, 1968.

Jack W. Rogers, Des Moines, for appellants.

Glenn M. Bradley, Sigourney, for appellees Isal Barber and Guy A. Barber.

Harry L. Snakenberg, Sigourney, for appellee Elmer Mertz.

RAWLINGS, Justice.

A niece and nephew of William F. Martin, deceased, filed objections to executor's final report. Trial court held adverse to objectors and they appeal. We affirm in part, reverse in part.

April 10, 1965, William F. Martin, sometimes hereafter referred to as decedent or Martin, then 83, died testate in Keokuk County. His will was admitted to probate April 29, 1965. The same day Elmer H. Mertz qualified as executor.

John W. Martin and Colleen McCreery, niece and nephew respectively of decedent, challenged the executor's final report.

In so doing they protested, (1) the right of Isal Barber, joint surviving payee, to proceeds of a bank deposit; (2) allowance of claim filed by Guy A. Barber; and (3) grant of a fee to the executor.

From February 13, to March 5, 1965, decedent lived in the home of his niece Isal Barber and her husband Guy, at Hayesville.

Except for this three week period decedent lived in a nearby one room frame building. He had there only the barest of necessities, being frugal to the point of miserliness. The Barbers often provided him meals and transportation. He seldom had enough food in his living quarters. They usually did his laundering.

At one time, about 1962, some friction developed between Martin and the Barbers but this was apparently forgotten before decedent started living in the Barber home as aforesaid.

The trial court found there was competent evidence disclosing Mertz received from Martin the key to his bank box sometime prior to March 5, 1965, with instructions to issue the certificate here in question.

The record discloses that on March 9, 1965, maturity date of certificate # 26302 payable to Martin alone, the bank issued renewal certificate # 27691 payable to W. F. Martin *or* Isal Barber.

After Mertz had qualified as executor, Isal was paid $4500 on the joint certificate, with balance withheld for inheritance tax. See section 528.64, Code, 1962.

To the extent here material decedent's will, prepared in 1960 by Mertz, provided the corpus of his estate go ultimately to Colleen McCreery, Fort Morgan, Colorado, and John W. Martin, Des Moines, Iowa. Gross value of the estate is $28,863.

The claim of Guy A. Barber in the sum of $561.25 is for meals, laundry services and transportation provided decedent from April 1958, until March 1965.

Trial court ordered, (1) Isal Barber is entitled to retain proceeds of the certificate of deposit; (2) Guy A. Barber's claim be allowed in the sum of $300; and (3) the executor be granted a fee of $697.26.

I. All matters here involved were submitted, tried and determined by the trial court as a proceeding entirely in equity. The appeal is likewise presented.

■ Under these circumtances it will be considered by us de novo. See rules 344(a) (3) and 344(f) (7), R.C.P., and Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86. But see section 633.33, Code, 1966.

In that regard a statement contained in Luse v. Grenko, 251 Iowa 211, 214, 100 N.W.2d 170, 172, is here appropriate: "Although our review is de novo we give weight to the trial court's findings. Groves v. Groves, 248 Iowa 682, 692, 82 N.W.2d 124, 130, and citations. Indeed, where similar issues were involved we have said, 'We deem this a proper case for us to lean heavily on the judgment of the trial court, even though we try it on apppeal de novo.' Luebke v. Freimuth, 248 Iowa 58, 67, 78 N.W.2d 473, 479."

At the same time our review is confined to those propositions asserted and argued in support of a reversal. Steele v. Northup, 259 Iowa 443, 143 N.W.2d 302, 304–305, and citations.

II. All evidence presented as to conversations and transactions between Martin and Mertz, executor, with ruling reserved on objections, was ultimately excluded by the court under our dead man statute. Sections 622.4 and 622.5, Code, 1962; In re Estate of Lenders, 247 Iowa 1205, 1211–1212, 78 N.W.2d 536; In re Estate of Conner, 240 Iowa 479, 488–492, 36 N.W.2d 833; 97 C.J.S. Witnesses § 155, page 596; and 58 Am.Jur., Witnesses, sections 299–303, pages 185–187.

III. However the record discloses competent evidence to the effect that sometime just prior to March 5, as Mertz was passing the Barber home one noon, Martin rapped on the window and motioned for Mertz to come in. Martin was then alone and the two men talked. In this regard see O'Dell v. O'Dell, 238 Iowa 434, 447–448, 26 N.W.2d 401.

Also, Martin's box was opened on or about March 9, single payee certificate # 26302 removed, and alternate payee certificate # 27691 then placed in the depository. There were other certificates in the box payable to Martin alone.

In addition the bank records, properly identified and admitted in evidence, disclose certificate # 27691 was issued by the bank in the regular course of business. See section 622.28, Code, 1962.

■ Furthermore, no showing whatsoever is made upon which to base a finding there existed any confidential or fiduciary relationship between Martin on one hand, and the Barbers or Mertz on the other. Neither is there any basis upon which to conclude Mertz acted other than in good faith, or that he or the bank stood to profit in any degree by virtue of possible benefits conferred upon Barbers by the decedent. See Knigge v. Dencker, 246 Iowa 1387, 1392–1393, 72 N.W.2d 494; Menary v. Whitney, 244 Iowa 759, 764–765, 56 N.W.2d 70; and 24 Am.Jur., Fraud and Deceit, section 256, page 88. The trial court found no indicia of fraud or overreaching by Mertz or Isal Barber. We are satisfied that finding is factually consistent with the record.

From the foregoing it may reasonably be inferred: Martin delivered his bank box key to Mertz, the box was opened, and certificate # 26302 being removed was replaced by certificate # 27691, all in accord with Martin's knowingly expressed intent and desire. See Stenberg v. Buckley, 245 Iowa 622, 626–627, 61 N.W.2d 452.

IV. The trial court determined issuance of certificate of deposit # 27691 constituted a valid *gift* to Isal Barber, vesting in her all right to the proceeds.

In view of our more recent pronouncements, it is evident this result is correct though based upon an erroneous premise.

■ In that regard we said in McCoy v. Martin, 257 Iowa 146, 148, 131 N.W.2d 783, 784: "If it is a case in which the learned court was right for a wrong reason, it was nevertheless right." See also Houla-

han v. Brockmeier, 258 Iowa 1197, 1203, 141 N.W.2d 545.

V. Referring now to the matter of rights under a bank deposit certificate, or book, payable to one named party or another, our early cases were determined upon the relatively rigid and unrealistic gift or trust theory.

However, O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412, in adopting a tripartite contract approach, held either the gift or joint tenancy concept could be employed to support the survivor's claim in a joint bank account; an account contributor may retain control of the indicia of deposit; and a noncontributing party need sign no agreement. .

Later, in the case of In re Estate of Murdoch, 238 Iowa 898, 901–902, 29 N.W.2d 177, this court upheld right of survivorship in a joint bank account solely on the contract basis. See also In re Estate of Winkler, 232 Iowa 930, 934, 5 N.W.2d 153.

Our more recent decisions have consistently approved the views expressed in O'Brien and Murdoch, both supra. See In re Estate of Stamets, 260 Iowa 93, 148 N.W.2d 468, and citations.

VI. Here the renewal certificate, placed by Mertz in decedent's bank box, designated the depositors, "W. F. Martin or Isal Barber * * * payable to the order of self".

We dealt with a comparable situation in Andrew v. Citizens' State Bank, 205 Iowa 237, 216 N.W. 12. There a mother deposited funds in a bank evidenced by a certificate of deposit "payable to the order of self or Hazel Pent, daughter".

Referring only to joint tenancy, this court held Hazel Pent entitled to the proceeds upon death of the mother. .

In so holding we said, loc. cit., 205 Iowa 243, 216 N.W.: "Appellant also insists that the burden was upon Hazel Pent to allege and prove that a gift of the certificate was intended and made to her by her mother. While no evidence was offered for that purpose, we think the necessary inference from matters appearing in the record is that * * *. The certificate was lawfully payable to her (Hazel Pent) after her mother's death upon the surrender thereof to the bank issuing it. Section 9267, Code of 1924. (Section 528.64, Code, 1962) *No other reason for the mother's making the certificate payable to herself or daughter than that she intended her to receive the money, unless paid out on her own order, is suggested.* The fact that the certificate remained unpaid and unchanged is some evidence of the mother's intention. *The record discloses neither pleading nor proof in any way denying or explaining the purpose and intention of the mother."* (Emphasis supplied)

And, if funds are payable to an "or" survivor pursuant to a bank deposit certificate under the joint tenancy doctrine, the same result will surely obtain with as much if not greater force and effect by application of the tripartite contract or third party beneficiary concept. A statement in 37 Iowa L.Rev. 293, amply supported by respectable authorities, sets forth both the rationale and demonstrates the ultimate efficacy of this approach. "The development of the contract theory may be said to have begun in Massachusetts in 1916. (Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N.E. 371) It was fostered by the statutes protecting the bank from liability in payment to either party, and was instrumental in resolving the doctrinal confusion of the other theories. The primary doctrinal innovation brought about by the contract theory is that the interest of the court is directed solely at the bank-depositor relationship, rather than the relationship between the co-depositors. The gift, trust or joint tenacy theories, on the other hand, are concerned solely with this latter relationship. By stating the mutual rights and obligations of the co-depositors in terms of the bank's duties, the formal requirements of a gift, trust or joint

tenancy are finessed, but the relationship between the parties is nevertheless fixed and certain. Actually, this relationship most nearly approximates that of joint tenancy, but differs materially in the immediate right of either depositor to withdraw the entire amount.

"The contract theory is not without its doctrinal difficulties. The problem of consideration, especially with regard to a noncontributing depositor, has been discussed by the courts, but the consideration between the bank and the contributing depositor has been held sufficient to support the contract. *The transaction has been viewed as a tripartite or third party beneficiary contract, and as a contract creating the rights of the parties against the bank, with no specific name being attached to the source of these rights."* (Emphasis supplied)

Our most recent pronouncements are not in conflict with the foregoing views. See In re Estate of Stamets, 260 Iowa 93, 148 N.W.2d 468, 471–473, and citations.

██ We hold the gift theory so strenuously urged and argued by objectors is not here controlling.

VII. The question next presented, heretofore briefly touched upon, is whether the certificate of deposit before us served to vest in Isal Barber a contractual or joint right to the funds deposited.

Again we refer to Andrew v. Citizens' State Bank, supra, where, under an indicia of deposit in form comparable to that here disclosed, this court held a survivor entitled to the res.

In so doing we took the position, the fact that the certificate remained unpaid evidenced an intent on the part of the sole contributor to vest in the named joint payee a right to the proceeds. In this regard see also Nelson v. Olympia Federal Savings & Loan Ass'n, 193 Wash. 222, 74 P.2d 1019.

Dealing with rights of alternate payees to a deposit evidenced by a bank book, this court has said: " * * * possession of one would be the possession of both, it would seem unimportant that the book remained in the safety deposit box. The administrator urges in support of his views the facts of delivery and possession. We do not think any manual delivery necessary, and, in many instances, it would hardly be possible, or at least not practicable. If the instrument executed was valid, then the possession of the deposit or the book evidencing the deposit of either * * * was the possession of the other, and it would be immaterial as to who held the actual manual custody. (Authorities cited)." In re Estate of Winkler, 232 Iowa 930, 934, 5 N.W.2d 153, 155.

VIII. In line with the foregoing, use of the word "or" here attains some measure of significance.

Ordinarily its usage means, in the alternative. This court has so held. Ness v. H. M. Iltis Lumber Co., 256 Iowa 588, 593, 128 N.W.2d 237, and Holmes v. Gross, 250 Iowa 238, 250, 93 N.W.2d 714. See also section 528.64, Code, 1962.

It was evidently in that sense the word was employed in the instant case.

In support of the foregoing, 10 Am.Jur. 2d, Banks, section 369, page 332, states: "Generally, where a bank account of two depositors is expressly made payable to either or to the survivor, the right of survivorship exists. The contract of deposit need not be in any particular form to create a joint account; any instrument in writing, properly executed, which evidences a meeting of the minds of the parties thereto is sufficient. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required; courts are controlled

by the substance of the transaction rather than by the name given it. This rule has been held to apply to the creation of a joint and survivorship account in savings and loan or building and loan share accounts.

"While it is not essential to the creation of a joint bank account with right of survivorship that the beneficiary depositor have knowledge of the account or have possession of the passbook or sign a signature card or make withdrawals therefrom, these are all important factors and competent evidence bearing on the question of intention.

"The creation of a technical joint tenancy effects a survivorship except where the doctrine of survivorship as an incident of joint tenancy has been abrogated by statute."

■ IX. The trial court found in effect, if not in fact, Martin's intent was to vest in Isal Barber, as third party beneficiary, an alternate right of ownership in the deposit, which intent is controlling. With this finding we agree. See Williams v. Williams, 251 Iowa 260, 264–265, 100 N.W. 2d 185, and In re Estate of Murdoch, 238 Iowa 898, 902, 904, 29 N.W.2d 177.

X. It is also claimed by these objectors the trial court erred in allowing Guy A. Barber any sum for services rendered by him for the benefit of decedent.

■ The burden imposed upon Barber was that he established his claim by a preponderance of the evidence. In re Estate of Stratman, 231 Iowa 480, 487–488, 1 N.W.2d 636, and Roth v. Headlee, 238 Iowa 1340, 1343, 29 N.W.2d 923.

■ Of course, he was aided in this by the inference that where one ordinarily performs services for another which are known to and accepted by him, the law implies a promise to pay for such services. See In re Estate of Talty, 232 Iowa 280, 283, 5 N.W.2d 584, 144 A.L.R. 859. On the other hand this implication does not usually apply where there exists between the parties a husband and wife, or parent and child relationship. Ferris v. Barrett, 250 Iowa 646, 652, 95 N.W.2d 527.

But in the case now before us the relationship between Martin and claimant was that of uncle and nephew by marriage, as a result of which any inference of gratuitous assistance would at most be relatively slight. Ferris v. Barrett, supra.

■ In addition, while a claim in probate stands denied, the defense of gratuity is a special one not raised by general denial. Ferris v. Barrett, supra, loc. cit., 250 Iowa 650, 95 N.W.2d 527.

And in the instant case no such special defense was asserted according to the record.

■ So the matter of gratuitous service as a defense is not here involved, leaving to be determined only two questions, (1) whether an implied agreement arose under the facts and circumstances disclosed, by virtue of which it can be said decedent intended to pay for services rendered; and (2) whether claimant expected to be compensated for any benefits conferred on decedent.

■ We are persuaded Guy A. Barber failed to establish his claim by the requisite degree of proof.

■ Even aided by the foregoing inference or implication against any gratuity he was still required to establish his claim by a preponderance of the evidence. See Maasdam v. Estate of Maasdam, 237 Iowa 877, 889, 24 N.W.2d 316, and Roth v. Headlee, supra.

In that regard the record discloses claimant, as a witness in his own behalf, testified as follows: (1) he kept no record of services allegedly performed; (2) he never expected to be paid for transportation, food, laundry and care supplied to Martin; (3) neither he nor his wife ever told

Martin they wanted pay for these services; (4) there was never any understanding with Martin as to payment; (5) he did not decide to file a claim until the summer after Martin's death; and (6) he, Barber, derived a benefit from some of the things done for Martin.

Touching on the foregoing this court said in Bartholomew v. Adams, 143 Iowa 354, 358, 121 N.W. 1026, 1027: " * * * in order to recover upon an alleged implied contract with a person since deceased, it is the only just and safe rule to require that facts justifying the implication be well established, and nothing be left to mere conjecture. Without in any manner disparaging the present case, it is nevertheless unfortunately true that not infrequently claims which would never have been made against a party living are asserted against his estate when death has closed his mouth to speak in his own defense, and services for which a modest compensation would have been perfectly satisfactory if paid in his lifetime suddenly acquire added value to the mind of the creditor when payment is to be made by an administrator; and, in view of this tendency, and of the difficulty under which the representative of the estate must labor to defend against such demands, it is proper for the courts to require the showing for their allowance to be at least reasonably satisfactory. The case before us does not present such a record."

Under existing circumstances we conclude the trial court erred in granting to Guy A. Barber any recovery on the claim filed by him.

XI. Objections made relative to payment of compensation to Mertz, the executor, are without substance.

As heretofore disclosed no disqualifying conduct on his part appears, and he is entitled to the fee prescribed by law for services rendered. See generally In re Estate of Rorem, 245 Iowa 1125, 66 N.W.2d 292, 47 A.L.R.2d 1089; 34 C.J.S. Executors and Administrators, § 852, page 1008, § 876, page 1045; 31 Am.Jur.2d, Executors and Administrators, sections 501–503, pages 226–228; and 83 A.L.R. 728.

XII. For all the reasons aforesaid the judgment of the trial court must be affirmed as to the right of Isal Barber to proceeds of bank deposit certificate # 27691, and payment of a fee to Elmer H. Mertz, executor, but reversed on allowance of any part of the claim filed by Guy A. Barber.

Affirmed in part, reversed in part, and remanded for entry of decree consistent with this opinion.

All Justices concur, except LeGRAND, J., who concurs in the result.