BURTON BRUHL, appellant, v. PAUL THUL et ux., appellees.

BURTON BRUHL, petitioner, v. HON. HARVEY UHLENHOPP, Judge of District Court in and for Wright County, respondent.

Nos. 51437
51436.

(Reported in 134 N.W.2d 571)

April 6, 1965.

Rehearing Denied June 8, 1965.

B. V. Willie and Carol G. Willie, both of Eagle Grove, for appellant.

Roy A. Henderson and James E. Houser, both of Belmond, for appellees.

Moore, J.—This is a declaratory judgment action to construe the following written contract and to adjudge all the rights of the parties for crop years 1960 and 1961.

"This contract made and entered into this 26th day of April, 1960, by and between Paul and Marcella Thul, husband and wife,

* * * as First Party, and Burton Bruhl, * * * as Second Party, WITNESSETH:

"That for and in consideration of the mutual covenants and agreements herein, First Party and Second Party agree to perform their covenants in regard to the farm owned by First Party [describing it].

"That Second Party agrees to do all the necessary labor and preparation for planting, raising, cultivating, and harvesting, the agreed upon crops on the designated land. Second Party further agrees to deliver to market and/or place in the designated storage areas on the farm, any and all crops produced during the year 1960.

"That First Party agrees to pay Second Party for this contracted labor, 50% of all funds received from the sale and/or sealing of all grain grown by Second Party. This will constitute the complete and sole remuneration for the contractual labor performed.

"That the Parties hereto agree to each furnish one half of all seed and fertilizer used for the production of a crop.

"It is agreed * * * all 2-4 D for thistles shall be furnished by the First Party and application performed by Second Party.

"The Parties hereto agree that in the event of suit, this contract is to be construed as a Performance Contract and is in no way intended to be a lease.

"It is agreed that in the event that either party herein shall fail to perform the covenants as fully described, then the other party shall have the right, at their option, to declare this contract null and void.

"This contract shall be amendable upon the consent of both parties herein, but only if done in writing, approved by the various Parties as provided by law, and said writing attached and made a part of this contract."

Plaintiff performed the contract in 1960, the corn crop was shelled in the field, delivered to defendants on the farm, sealed in defendants' barn and a Commodity Credit Corporation loan obtained. The estimate of the number of bushels was based primarily on plaintiff's opinion. He had farmed many years and

engaged in corn drying 13 years. Half the loan money was paid plaintiff by defendants.

By mutual agreement the contract was continued for 1961. Plaintiff again raised a corn crop and delivered it to defendants. The major part of this crop was sealed in defendants' garage and another loan obtained, half of which was paid plaintiff. The rest of this crop was stored in the loft of defendants' barn.

Through some misunderstanding between the parties the contract was not continued for the 1962 crop year.

The 1960 sealed corn was not sold at the end of one year as is often done. Each crop remained as sealed. The same government loan agency paid defendants 14 cents per bushel storage for the second year.

After difficulty developed between the parties over plaintiff's demand the overrun of the 1961 corn crop be sold and he be paid and defendants' claim of a shortage in the 1960 sealed corn, plaintiff then asserted his claim to half the 14 cents per bushel.

I. This contention presents the first problem here as it did in the trial court. Plaintiff contends proper construction of the contract entitles him to half the government payments. Defendants' argument, with which the trial court agreed, is that the literal wording of the contract clearly shows plaintiff is not entitled to any of the storage payments.

Thus we are asked to interpret the contract which the parties made for themselves. The objective is to ascertain the meaning and intention of the parties as expressed in the language used. Des Moines Union Ry. Co. v. Chicago G. W. Ry. Co., 188 Iowa 1019, 1023, 177 N.W. 90, 91, 9 A. L. R. 1557; Coon Valley Gravel Co. v. Chicago, R. I. & P. R. Co., 241 Iowa 487, 490, 41 N.W.2d 676, 678; 17 Am. Jur.2d, Contracts, section 245.

It is the court's duty to give effect to the language of the contract in accordance with its plain and ordinary meaning and not make a new contract for the parties by arbitrary judicial construction. Field v. Southern Surety Co., 211 Iowa 1239, 1242, 235 N.W. 571, 572; Mallinger v. State Farm Mut. Auto. Ins.

Co., 253 Iowa 222, 226, 111 N.W.2d 647, 649; 17A C. J. S., Contracts, section 296(3).

The court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language. In interpreting a contract we may resort to rules of construction only where the language of the instrument is of doubtful meaning. Streator Clay Mfg. Co. v. Henning-Vineyard, 176 Iowa 297, 312, 155 N.W. 1001, 1005; City of Des Moines v. West Des Moines, 244 Iowa 310, 315, 56 N.W.2d 904, 907; Sears, Roebuck and Co., Inc., v. Poling, 248 Iowa 582, 588, 81 N.W.2d 462, 466; Weik v. Ace Rents, Inc., 249 Iowa 510, 515, 87 N.W.2d 314, 317. See also 17A C. J. S., Contracts, section 294(b).

Volume 17 Am. Jur.2d, Contracts, section 241, pages 625, 626, states:

"As a general proposition, where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty. It is fundamental that the principles of construction cannot be applied to vary the meaning of that which is otherwise clear and unambiguous, and, in this respect, it is to be noted that if the language of the contract is plain and unambiguous, the intention expressed and indicated thereby controls, rather than whatever may be claimed to have been the actual intention of the parties. It has been said that it is only where the language of a contract is ambiguous and uncertain and susceptible of more than one construction that a court may, under the well-established rules of construction, interfere to reach a proper construction and make certain that which in itself is uncertain."

Our problem here is to determine whether there is ambiguity. A reading of the entire contract leads us at once to conclude the terms are clear that plaintiff's "complete and sole remuneration for the contractual labor performed" was to be "50% of all funds received from the sale and/or sealing of all grain grown" by him. He agreed "to deliver to market and/or place in the designated storage areas on the farm, any and all crops produced during the year." The contract expressly provides it is not a lease. Plaintiff was merely hired to perform

work. He had no possessory interest in the buildings and clearly none in the grain after delivery to defendants. To adopt plaintiff's contention would require writing into the contract after "sealing" the words "or resealing" or "on the farm storage". We have no right to make such additions. We agree with the trial court that the contract does not give plaintiff any interest in the farm storage payments.

We note plaintiff pleads an oral agreement was made in March 1960 and the written contract purports to put in writing that oral agreement. Plaintiff on his case in chief submitted evidence of himself and wife regarding conversations with defendants preliminary to the agreement. Defendants, without any objection by plaintiff, offered evidence of this kind by several witnesses. The weight of this evidence establishes the sealing was to be in defendants' buildings and they were to get the storage. Plaintiff's attempt to establish by such evidence a right to recover part of the storage payments is not supported by the record. We express no opinion on the admissibility of such evidence if objection had been made thereto.

II. Plaintiff's petition alleges a proper construction of the written contract and its implied conditions requires that defendants sell the grain within a reasonable time and two years is a reasonable time. The trial court found the practice of farmers generally is to sell or store sealed corn the next fall after sealing, the parties intended settlement each fall after sealing and that each party would be subject to a year's shrinkage. The evidence shows almost all of the shrinkage occurs during the first year.

Defendants' answer admits payment of various sums as alleged in plaintiff's petition and that a balance is owing for corn raised by plaintiff. They state they had offered payment and their willingness to confess judgment for half the fair and reasonable market value of the excess of the two corn crops.

Although plaintiff's counsel argue otherwise the only dispute in the trial court and here involves compensation for corn raised. Beans were divided in kind. Plaintiff had been paid for oats raised. Plaintiff testified, "There is no dispute on anything except corn". Defendant Paul Thul testified in detail regarding

the corn raised each year, its sealing, shrinkage, value, shortage in the 1960, overrun in the 1961 crop and stated, "All other items have been settled in full." The record and briefs seem to be encumbered with several matters not involved here.

After careful study of the record and briefs we agree with the trial court's finding: "There are two legal problems under the contract: (1) Is plaintiff entitled to half the government payments for storing corn for second years? and (2) Is plaintiff subject to be charged for deficiency in 1960 corn and entitled to payment for excess in 1961 corn?"

We have already decided the first question. Many witnesses testified in detail regarding the second problem and the amount owing plaintiff. All the corn, except that sealed in the garage, had been hauled to the elevator and weighed before trial. Some of the 1961 crop overrun had been sold. All other weighed corn had been returned to storage. The corn in the garage had been carefully measured and estimated by several experienced persons, including plaintiff.

Being in equity this case is triable de novo here. However, when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. Citation of authority is unnecessary. See Rule of Civil Procedure 344(f)7.

The trial court found:

"In 1960, there was a shortage of 472 bushels at the end of a year, from which plaintiff had previously received $228.92 from sealing. He owes defendants that much on 1960 corn.

"On the 1961 corn, there was an excess of 1549 bushels at the end of a year. Plaintiff's half at the end of a year was worth $797.14.

"In sum, plaintiff is entitled to $797.14 for 1961 corn less $228.92 for 1960 corn, for a net of $568.22."

After a careful study of the record, including matters set out in plaintiff's bill of exceptions, we agree with the trial court's findings and affirm the $568.22 judgment entered for plaintiff.

III. The trial court entered judgment on September 19, 1963, after which plaintiff gave notice of appeal and ordered a transcript which was not completed until December 1963.

March 16, 1964, plaintiff filed a bill of exceptions setting out a long colloquy between counsel during the trial. It was a quarrel between the attorneys over prior conversations between them as well as written communications which are now in the record. Apparently the court reporter had considered the matter table talk and had not included it in the transcript.

Defendants filed a motion to strike the bill of exceptions on several grounds including the claim it referred to immaterial matters and was untimely. The trial court struck the bill of exceptions as untimely but before doing so made this finding:

"As to immateriality, the challenged portion of the transcript centers around a colloquy between counsel. The court has examined the version claimed by plaintiff in his bill, and has reconsidered the entire case. Even if plaintiff's bill is accepted in its entirety, the ultimate decision in the case would not be altered in any respect. Nevertheless, plaintiff is entitled to urge upon the Supreme Court that the ultimate decision would be altered."

The bill of exceptions and the court's ruling are part of the record approved by the trial court and submitted to us. However, after the ruling striking the bill of exceptions plaintiff obtained from us a writ of certiorari to review the ruling. By our order the certiorari proceeding was submitted with the appeal.

Like the trial court we have considered plaintiff's version as claimed in the bill of exceptions and reach the same conclusion, with or without it. We annul the writ as presenting no substantial question requiring our determination.—Affirmed.

Writ of certiorari annulled.

All JUSTICES concur except THOMPSON and LARSON, JJ., who take no part.