In the Matter of the ESTATE of Andrew M. SHEIMO, Deceased.

Phil R. SHEIMO, Administrator, Appellee,

v.

Marlyn SHEIMO and Richard Sheimo, Appellants.

No. 52640.

Supreme Court of Iowa.

Feb. 6, 1968.

John H. Greve, Northwood, for appellants.

Floyd Ensign, Northwood, for appellee.

RAWLINGS, Justice.

Asserting ownership in estate represented, plaintiff-administrator filed application in probate for determination of rights in two bank certificates of deposit, each in the name of a single designated defendant-payee, found in decedent's safety deposit box. Defendant-payees both appeared and answered resisting the claim made by plaintiff. After hearing, trial court adjudged these certificates to be property of decedent's estate. Defendants appeal. We reverse.

Plaintiff is administrator of estate of Andrew M. Sheimo, deceased. Evidence produced by him discloses two time certificates of deposit were found in decedent's bank box, No. 3160 for $6000 payable to Richard Sheimo, and No. 3161 for $2000 payable to Marlyn Sheimo.

Defendants' evidence reveals decedent originally held an $8000 certificate issued by Citizens Savings Bank of Hanlontown, on which he had written with pencil, $2000 to go to Marlyn Sheimo, $6000 to go to Richard Sheimo.

August 7, 1964, Marion O. Hall, president of the bank, talked to Andrew Sheimo and told him if anybody should die the bank could not go by the penciled writing. In the words of this banker he said to decedent: "The only way you could do it if you wanted that—want six thousand to go to Richard and two thousand to Marlyn—is to fix out separate certificates of deposit for them and you do—you don't want your name on them. They get the interest." Decedent replied, "no, they are to be theirs. I don't want my name on them at all."

Hall then told Andrew to have Richard or Marlyn come in and endorse the original certificate. Richard did so and the new ones, here in question, were issued. The banker was told by Andrew he would deliver them to Richard and Marlyn at a later date.

These new certificates were then placed in decedent's lock box, all interest on them being subsequently paid to and retained by each of above named payees.

■ I. Defendants assert plaintiff-administrator had the burden of proof and failed to meet it. With this we are inclined to agree although the matter of burden of proof is here of little or no significance. See rule 344(f) (5), R.C.P.

At commencement of hearing to the court, plaintiff proceeded with introduction of evidence which consisted of this stipulation: "That Phil R. Sheimo is the Administrator of the A. M. Sheimo estate. That A. M. Sheimo for approximately a year before his death was unable to attend to his business affairs and was confined to a nursing home. That Phil Sheimo, as Administrator of this Estate, found the certificates involved, being Numbers 3160 and 3161, issued on August 7, 1964, by the Citizens Savings Bank of Hanlontown, Iowa. The certificate numbered 3160 shows the name of Richard Sheimo, and the certificate numbered 3161 shows the name of Marlyn Sheimo. These certificates of deposit were found in the decedent's safety deposit box and had been placed there by the decedent. The Administrator of the estate had no instructions concerning them. It was further stipulated that the certificates herein referred to were received into evidence."

Defendants then proceeded with introduction of evidence to which reference will later be made.

It would thus appear plaintiff had and assumed the burden of proof. In this regard see Liberty Mutual Insurance Co. v. Sweeney, 3 Cir., 216 F.2d 209, 211.

II. Neither trial court nor the parties refer to nature of original proceeding, or our review.

 In this regard it appears the matter was triable as in equity. Section 633.33, Code, 1966. That means we consider it de novo. Rule 344(f) (7), R.C.P., and Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86.

III. It is to us apparent the trial court reached an erroneous conclusion as the result of a sincere but nevertheless faulty application of the gift doctrine. See Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 166, and citations.

Where appropriate, the gift or trust concept may serve a just purpose. However, in recent times they have, per se, often been found to be too rigid and unrealistic when applied to vesting of rights in a bank deposit. They frequently serve to defeat rather than effectuate an evident intent and purpose.

In re Estate of Martin, Iowa, 155 N.W. 2d 401 (opinion filed January 9, 1968), reviews development of the relatively new contract theory in Iowa and its application to bank deposits, citing among others, In re Estate of Stamets, 260 Iowa 93, 148 N.W. 2d 468; In re Estate of Murdoch, 238 Iowa 898, 29 N.W.2d 177; O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412; and In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153.

Reference is also there made to Andrew v. Citizens St. Bank, 205 Iowa 237, 216 N.W. 12, involving a mother or daughter joint tenancy bank deposit. Quoting from the cited case, loc. cit., 205 Iowa 243, 216 N.W. 14, 15, we said: "Appellant also insists that the burden was upon Hazel Pent to allege and prove that a gift of the certificate was intended and made to her by her mother. While no evidence was offered for that purpose, we think the necessary inference from matters appearing in the record is that * * *. The certificate was lawfully payable to her (Hazel Pent) after her mother's death, upon the surrender thereof to the bank issuing it. Section 9267, Code of 1924. (Section 528.64, Code, 1962) *No other reason for the mother's making the certifcate payable to herself or daughter than that she intended her to receive the money,* unless paid out on her own order, *is suggested.* The fact that the certificate remained unpaid and unchanged is some evidence of the mother's intention. *The record discloses neither pleading nor proof in any way denying or explaining the purpose and intention of the mother."* (Emphasis supplied.)

Continuing, this court stated in the Martin Estate case, supra: "And, if funds are payable to an 'or' survivor pursuant to a bank deposit certificate under the joint tenancy doctrine, the same result will surely obtain with as much if not greater force and effect by application of the tripartite contract or third party beneficiary concept. A statement in 37 Iowa L.Rev. 293, amply supported by respectable authorities, sets forth both the rationale and demonstrates the ultimate efficacy of this approach. 'The development of the contract theory may be said to have begun in Massachusetts in 1916. (Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N.E. 371) It was fostered by the statutes protecting the bank from liability in payment to either party, and was instrumental in resolving the doctrinal confusion of the other theories. The primary doctrinal innovation brought about by the contract theory is that the interest of the court is directed solely at the bank-depositor relationship, rather than the relationship between the co-depositors. The gift, trust or joint tenancy theories, on the other hand, are concerned solely with this latter relationship. By stating the mutual rights and obligations of the co-depositors in terms of the bank's duties, the formal requirements of a gift, trust or joint tenancy are finessed, but the relationship between the parties is nevertheless fixed and certain. Actually, this relationship most nearly approximates that of joint tenancy, but differs materially in the

immediate right of either depositor to withdraw the entire amount.

" 'The contract theory is not without its doctrinal difficulties. The problem of consideraton, especially with regard to a non-contributing depositor, has been discussed by the courts, but the consideration between the bank and the contributing depositor has been held sufficient to support the contract. *The transaction has been viewed as a tripartite or third party beneficiary contract, and as a contract creating the rights of the parties against the bank, with no specific name being attached to the source of these rights.'* (Emphasis supplied.)"

IV. The question now to be resolved is whether the controverted certificates of deposit serve to vest in each of the named payees respectively, or to estate of decedent, all right to the funds on deposit.

We are persuaded the evident intent of the parties may be best determined and effectuated in this case by application of the previously mentioned tripartite or third party beneficiary doctrine.

Dealing with this subject, Simpson on Contracts, Second Ed., Hornbook Series, pages 242–243, states: "There are only two types of third parties who are permitted under American law to enforce a promise. There are (1) the donee beneficiary, and (2) the creditor beneficiary. If A for a consideration exacts a promise from B to render a stated performance to C, intending thereby to confer a gift upon C, C is a donee beneficiary entitled to sue B on the promise. It is the intent or purpose of the promisee, A, to exact a promise and ultimate performance as a gift to C that controls, not the purpose of the promisor, B. B's purpose in promising is to obtain the consideration furnished by the promisee, A, as the agreed exchange. The promisee's intent to obtain a gift promise for C's benefit will appear from the terms of the promise which he exacted. If by that promise the performance is to be rendered directly to and for the

third person, C, he alone will be benefitted, not A. * * *

"The strongest reason exists for permitting enforcement of the promise by the donee beneficiary, since if he cannot enforce it no one can."

And, Williston on Contracts, Single Volume, Revised Edition, section 357, pages 332–333, in explaining and justifying application of the third party beneficiary concept, says: "The Restatement of Contracts [section 133(1) (a) ] declares a person is a donee beneficiary when 'it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary.' * * * The donee, or as it is sometimes called, the 'sole,' beneficiary type, of which the ordinary life insurance contract payable to another than the insured is typical, was the earlier to receive recognition. The technical difficulty of permitting a third person who was neither in privity with the promise, since he was not the promisee, nor in privity with the consideration, since that moved from the promisee, to enforce a promise made for his benefit was counterbalanced by the fact that since the promisee himself had no pecuniary interest in the performance of the contract, he could recover only nominal damages for its breach, thus defeating the purpose of the parties and the value of the promise. Whatever the apparent technical difficulties, it was obvious that justice required some remedy to be given the beneficiary. The original bargain was convenient and proper, and the law should find a means to enforce it according to its terms. Some jurisdictions resorted to the trust theory in equity, but it was no easier to find a principle requiring the promisee to hold as trustee for the beneficiary what he recovered, and for which he had paid the consideration, than to find a principle allowing a direct recovery by the

beneficiary against the promisor. Even less defensible is the close relationship doctrine, still widely prevalent in America, with its crude fiction of merging the legal personality of a child, niece, wife, or even affianced wife, or other close relative of the promisee, into the promisee's legal personality, so that in the eyes of the law the real donee beneficiary becomes the promisee with full power to sue and recover on the promise."

In line with the foregoing this court stated in the case, In re Estate of Lindsey, 254 Iowa 699, 710, 118 N.W.2d 598, 604: "We have held repeatedly a contract between two persons for the benefit of a third person is valid as to such beneficiary and enforceable by him. Meyer v. Stortenbecker, 184 Iowa 441, 165 N.W. 456; In re Estate of Walker, 234 Iowa 1126, 15 N.W.2d 260; In re Disinterment of Tow, 243 Iowa 695, 53 N.W.2d 283; Reeves v. Better Taste Popcorn Co., 246 Iowa 508, 66 N.W.2d 853; 12 Am.Jur., Contracts, section 288.

"In In re Disinterment of Tow, supra, at pages 698, 699 of 243 Iowa, page 285 of 53 N.W.2d, it is said:

" 'One for whose benefit a contract is entered into may maintain action to enforce his rights under it. Venz v. State Auto. Ins. Assn., 217 Iowa 662, 666, 251 N.W. 27. The rule is unquestioned in this state. *It is unnecessary that the beneficiary assent to the contract or even that he have knowledge of it.* Rodgers v. Reinking, 205 Iowa 1311, 1319, 217 N.W. 411.' " (Emphasis supplied.)

On this subject see also Peoples Bank v. Baxter, 41 Tenn.App. 710, 298 S.W.2d 732, 738, and 17 Am.Jur.2d, Contracts, section 314, page 741.

■ This in turn points up the fact, as disclosed by In re Estate of Winkler, 232 Iowa 930, 934, 5 N.W.2d 153, that where the contract approach is employed, as in the case at bar, delivery need not be shown, either actual or symbolical.

■ V. Each of the two certificates here involved is specifically payable to a single named depositor, Richard in one instance, Marlyn in the other. It is also provided they are, " * * * transferable only on the books of this bank, * * *." This means they are nonnegotiable instruments. 9 C.J.S. Banks and Banking § 316(b), p. 642, and 10 Am.Jur.2d, Banks, section 458, page 430. Incidentally see section 554.3104, Code, 1966.

■ Under these circumstances it is evident Richard and Marlyn, as sole named payees, have a concomitant right as donee third party beneficiaries to enforce their rights under the certificates here involved. See In re Estate of Lindsey, supra, and 10 Am.Jur.2d, Banks, section 461, page 432.

■ VI. Unquestionably the certificates before us are contracts and must be accordingly considered.

■ In that regard it is our duty to ascertain and give effect to their terms and provisions which are plain and unambiguous. Bruhl v. Thul, 257 Iowa 889, 892, 134 N.W.2d 571. See also Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 167–172.

Intent of the parties is not in doubt. As heretofore disclosed each of these certificates provides for payment to a designated payee. Admittedly Andrew M. Sheimo was the contributor, but his contracts with the bank were, in substance, that it pay the amounts specified in the certificates to Richard and Marlyn as third party beneficiaries.

Lawfully issued in each instance, these certificates are made payable to named persons, the defendants in this case. That was the apparent intent and purpose of the contracting parties, i. e., decedent and the bank. Above all else it was the evident aim and desire of the depositor. No other reason appears for making the certificates payable as they are, and the record discloses nothing which can be said to refute this clearly expressed objective.

■ VII. We conclude the evidence preponderates in favor of defendants and

the trial court erred in holding otherwise. This means certificate No. 3160 is the property of Richard Sheimo, and certificate No. 3161 is the property of Marlyn Sheimo.

Reversed and remanded for entry of order and decree consistent with this opinion.

GARFIELD, C. J., and SNELL, MOORE, STUART, and MASON, JJ., concur.

LARSON, J., concurs in result.

BECKER and LeGRAND, JJ., dissent.

BECKER, Justice.

I dissent.

The majority opinion omits some facts of importance: Prior to August 7, 1964 decedent had a certificate of deposit for $8000 on which he had written that $2000 was to go to Marlyn Sheimo and $6000 to Richard Sheimo. The record is not clear to whom this earlier certificate was made payable. We were told in oral argument this first certificate named both defendants as payees (an unsatisfactory way to come by needed information).

On August 7, 1964 the banker talked to decedent about this certificate. The record on the point is short. We shall quote most of it: "I told the decedent that if anybody should die, that the certificate of deposit would not be divided into two thousand and six thousand because the bank could not go by this writing on the certificate of deposit. That the decedent would have to either separate the certificate of deposit if he wanted to divide it out that way.

"The decedent said to make out two certificates of deposit, one for six thousand dollars to Richard Sheimo and one for two thousand dollars to Marlyn.

"I then prepared these two certificates of deposit and told him we would have to have either Richard or Marlyn's endorsement on the old certificate of deposit before we could make out this new one. Richard came and endorsed the old $8,000.00 certificate of deposit. I had the certificate of deposit endorsed so we could make out these two new ones. * * *

"Q. And did you help him put—? A. I helped him put them in the safety deposit box.

"Q. Was there any further discussion between you and the decedent at this time concerning this transaction? A. Just that he was going to deliver them some time but he didn't know when."

The face of the certificate has the following written on it: "payable to said depositor, or, if more than one, to either or any of said depositors or the survivor or survivors, *upon presentation and surrender of this certificate on a maturity date.*" (Emphasis supplied.)

With these facts added there can be no doubt the elements of a gift were not shown. At least one of the claimed donees, Richard, was present when the new certificates were made out but no delivery was made. Delivery was neither impractical nor inconvenient. Instead, decedent returned the certificates to his lock box with the statement that "he was going to deliver them some time but he didn't know when." See Gray v. Watters, 243 Iowa 430, 51 N.W.2d 885.

Decedent's treatment of the prior $8000 certificate establishes the pattern of his action and is relied upon by the trial court. We are told the prior certificate also was not in decedent's name but in the names of Richard and Marlyn. But decedent retained control of the certificate and subsequently exercised dominion over it by having it substantially changed. He had it reissued in the form of the two present certificates, changing the presumptive equal ownership (if we are to rely on the face of the certificate alone) to unequal designation— $6000 for Richard and $2000 for Marlyn.

The trial court felt these actions negatived any intent to part with dominion and control over the first certificate and thus negatived a gift of the second certificates. The trial court was right.

II. The majority applies the theory of contract to establish ownership to assets held individually in the name of a person other than the person who furnished the consideration for the asset. This theory is now the law of Iowa where the assets are held in joint tenancy. It has never been applied to the situation we have here. There are vital differences in fact and in theory.

Before extending the contract theory of ownership to areas where the purchaser is not a joint owner we should look at the development of that doctrine in the joint tenancy field.

Up to and including Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841, the rule as to join tenancy set out in Taylor v. Grimes, 223 Iowa 821, 826, 273 N.W. 898, was the law of Iowa.

Taylor v. Grimes states: "The mere opening of a joint account each having an equal right to draw does not in and of itself establish a gift, 28 C.J. 664; 48 A.L.R. 191. There must be an intention to make a gift; a present intent to part with the title and to transfer all right to and dominion over the subject of the gift to the donee without power of revocation followed by delivery of the subject matter of the gift."

Following the Sinift case establishment of survivor's ownership of personal property on the theory of a contractual right was again urged on this court. In re Winkler Estate, 232 Iowa 930, 5 N.W.2d 153, established joint tenancy on the basis of the evidence which showed mutual possession of the bank book and relied heavily on the contract theory. "Here we have the instrument creating the joint tenancy declaring in express terms the rights of the parties. The card, which we regard as a contract, shows all the essential features of joint tenancy. It so declares and so designates the joint deposit."

The court did not specifically find there was a gift under the facts of the Winkler case. A similar result was reached in O'Brien v. Biegger, 233 Iowa 1179, 11 N.W. 2d 412, where the court first reached its conclusion on the contract theory but also found a gift inter vivos had been completed. The intention of the parties was held to be controlling.

In re Murdoch's Estate, 238 Iowa 898, 29 N.W.2d 177, McManis v. Keokuk Savings Bank & Trust Co., 239 Iowa 1105, 33 N.W.2d 410; Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870; In re Miller's Estate, 248 Iowa 19, 79 N.W.2d 315; Burns v. Nemo, 252 Iowa 306, 105 N.W.2d 217; and In re Stamet's Estate, 260 Iowa 93, 148 N.W.2d 468, all deal with situations where there is a clear contractual base.

In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49, establishes the same principle for creation of joint tenancy in United States Government Bonds. In this field the federal regulations are explicit and controlling as part of the contract of purchase of the bond.

Many of the above cited cases quote signature cards expressly providing that the *parties agree to the form of ownership*. Of course we have no such signature card or other evidence of agreement here. Each of the above cases is finally decided on the presence or absence of a contract between the parties themselves or as between one or more of the parties and the bank. In Stamets, supra, at page 471 of 148 N.W. 2d we said: "It is plain a deposit in an ordinary bank creates a valid contract between the bank and depositor under which the former agrees to repay the funds *subject to the rules and regulations of the bank*." (Emphasis supplied.)

The importance of the phrase "subject to the rules and regulations of the bank." becomes apparent when a situation like that considered in Keokuk Savings Bank &

Trust Co. v. Desvaux, 259 Iowa 387, 143 N.W.2d 296, develops. In that case decedent caused a joint tenancy account to be opened. Subsequently, all of the funds in the account were withdrawn at *decedent's written order but no pass book was presented.* We held that failure to present the pass book was fatal to the transfer. True, either joint owner could withdraw all of the funds if the pass book were presented. But without the pass book neither could make withdrawals. The parties have a right to rely on the bank rules.

Here we have no bank rules of record. We do have the recitation on the face of the certificate that it is payable "upon presentation and surrender of this certificate on maturity date." Keokuk Savings Bank & Trust Co. v. Desvaux, supra, settles the proposition that people have a right to rely on the rules of the bank. People also have a right to rely upon what is written on the face of the certificate. This being the case the decedent could rely on the fact that he still retained an important measure of control. Retention of this control is fatal. Without the well established principles of joint tenancy any other result would be contrary to the law relating to wills. Code, 1966, section 633.279.

The foregoing discussion would seem to agree with Restatement of the Law, Contract, Vol. I, § 158, p. 193 which states in part:

"(1) *The right acquired by the assignee under a gratuitous assignment is terminated by the assignor's death,* by a subsequent assignment by the assignor, or by notification from the assignor received by the assignee or by the obligor, unless, * * *

"(b) the assigned right is evidenced by a tangible token or writing, the surrender of which is required by the obligor's contract for its enforcement, *and this token or writing is delivered to the assignee;* or" (emphasis supplied).

III. Another cogent reason for adhering to our former rules relating to transfer of

ownership appears when the fields of inheritance tax, estate tax and gift tax laws are considered. Section 450.3(3) Code, 1966 includes, for inheritance tax purposes, property "intended to take effect in possession or enjoyment after the death of the grantor or donor." How is this type situation to be discovered? We say a donor may place an asset in the donee's name but continue in control of the disposition by control of the physical evidence of the asset. He can continue such control to time of death but we treat the gift as complete in all respects at the time the ficional contract is made. The state will no doubt develop a theory to handle such situations when they come to its attention. Many such situations will not come to the state's attention for there will be nothing to alert the department of revenue. The tax revenue will be lost either through deliberate evasion or innocent failure to report. The result will be the same.

LeGRAND, J., joins in this dissent.