**AMARILLO NATIONAL BANK, Appellant,**

v.

**Delia DILDAY, a/k/a D.E. Wren, Appellee.**

**No. 07–84–0052–CV.**

Court of Appeals of Texas, Amarillo.

June 21, 1985.

Rehearing Denied July 10, 1985.

Underwood Law Firm (D. Barry Stone and Martin L. Rowley), Amarillo, for appellant.

Herbert C. Martin, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Amarillo National Bank (Bank) appeals from an order of the trial court denying its motion for summary judgment and granting summary judgment in favor of appellee Delia Dilday, a/k/a D.E. Wren (Wren). In the judgment, Wren was awarded the sum of $30,772.70 in damages for wrongful payment by the Bank of a

certificate of deposit. We affirm the judgment of the trial court.

Wren instituted this suit against the Bank based upon the Bank's payment to Wren's son, Tony Dewey, of the proceeds from a certificate of deposit issued by the Bank and numbered 49042. The record establishes that the certificate in question was purchased with funds belonging to Wren. It was in the face amount of $22,-000, was dated September 29, 1981, and provided for interest at the rate of 15.95% per annum. It provided that it was "PAYABLE TO THE ORDER OF D.E. Wren or Tony Dewey AFTER 30 mos. ON THE RETURN OF THIS CERTIFICATE PROPERLY ENDORSED." In two places it recited that it was non-negotiable and also had a stamped notation that it was non-transferable.

The undisputed facts are that on February 3, 1982 and July 15, 1982, Dewey executed two promissory notes to the Bank in the principal sums of $2,405.04 and $1,998.90, respectively. In conjunction with the $2,405.04 note, Dewey pledged certificate of deposit 49929 in the amount of $2,000 which was payable to D.E. Wren or Tony Dewey in the same manner as certificate 49042.

On December 20, 1982, Dewey appeared at the Bank and told the installment loan teller that he wanted to pay his loans with the proceeds of the two certificates of deposit. The Bank had possession of the $2,000 certificate under the pledge agreement. Dewey did not have possession of the $22,000 certificate. The Bank permitted him to sign an unsworn statement and indemnity agreement which recited that the $22,000 certificate had "been lost or mislaid and cannot be found." Both certificates of deposit were cashed and a cashier's check in the amount of $24,670.87 payable to Wren or Dewey was issued by the Bank. The check was endorsed by Dewey, cashed by the Bank and $2,633.79 deducted to pay the balance due on Dewey's notes. The remainder of $22,037.08 was paid to Dewey in cash. Later that day, Wren contacted

the Bank and, upon learning that the $22,-000 certificate had been cashed, notified the Bank that the certificate was and had been in her possession and Dewey's statement was incorrect. The instant suit then ensued.

In attacking the judgment, the Bank raises two points of error, in both of which it asserts that it was entitled as a matter of law to pay the proceeds to Dewey. Since both points involve the same question, the Bank briefs and argues them together and we will likewise consider them together.

Initially, we note that Wren has filed a motion to strike the Bank's brief and response to Wren's motion for summary judgment. However, upon oral argument at submission of this cause, Wren agreed to the overruling of the motion. Accordingly, we do so and proceed to consider the merits of the appeal.

The threshold question to be determined is whether the certificate in question was a negotiable instrument. If an instrument is negotiable and payable to alternative payees, Tex.Bus. & Com.Code Ann. § 3.116 (Vernon 1968) * makes possession of the instrument a prerequisite for it to be negotiated, discharged or enforced. The alternative to such possession is a proceeding to obtain a court order pursuant to § 3.804. Obviously, in cashing the certificate, the Bank did not fulfill the requirements of either section.

In contending that the certificate is a negotiable instrument, Wren points out that it is payable to "order" as required by § 3.104(a)(4) and meets all other requirements of § 3.104. Wren argues that the notations that the certificate was non-negotiable and non-transferrable did not destroy its nature as a negotiable instrument. In support of that position, she relies upon the footnote statement in *First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co.*, 524 S.W.2d 525, 529 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 529 S.W.2d 67 (Tex.1975) that:

---

* All references to section numbers are to Tex.    Bus. & Com.Code Ann. (Vernon 1968).

Whether a certificate of deposit is negotiable or non-negotiable is not determined by labeling the writing "non-negotiable" but by its terms. To be negotiable it must be payable to "order" or "bearer;" otherwise, it is non-negotiable. § 3.104(a).

However, in that case the question before the Court was whether the certificate of deposit there considered was an "instrument" within the purview of § 9.105 (which deals with security transactions) rather than its negotiability. Thus, the statement was dicta. Moreover, it was made without citation of authority.

There is a paucity of direct authority on the question presented. However, we note § 1.102(c) which provides:

> The effect of provisions of this title *may be varied by agreement,* except as otherwise provided in this title ... but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

We find nothing in the Code which would forbid an agreement between the parties as to the non-negotiability of an instrument, nor do we find that such an agreement, if clearly and distinctly shown on the instrument itself, would be manifestly unreasonable. We also find persuasive the language contained in Tex.Bus. & Com.Code Ann. § 3.119 comment 5 (Tex.UCC) (Vernon 1968) which supports the proposition that certain language can destroy the negotiability of an otherwise negotiable instrument.

In support of its proposition that the certificate was not negotiable, the Bank cites the pre-Code decision of *Burke v. Ward,* 32 S.W. 1047 (Tex.Civ.App.1895, no writ). The Court there recognized as valid a note provision that the note would not be negotiable until the day it was due. The Bank also cites *Henry v. Cobb Bank & Trust Company,* 151 Ga.App. 725, 261 S.E.2d 459 *rev'd on other grounds,* 156 Ga.App. 454, 274 S.E.2d 804 (1979) and *In re Estate of Sheimo,* 261 Iowa 775, 156

N.W.2d 681 (1968). In *Henry,* the promissory note under consideration stated on its face that it was "non-negotiable." The court held that although the note contained language which would otherwise make it negotiable, the statement that it was non-negotiable was not ambiguous and was sufficient to destroy its negotiability. In *Sheimo,* the certificate of deposit there under scrutiny contained a provision stating that it was "transferable only on the books of this bank." The Iowa court held that in the determination of the questions as to the non-transferability and non-negotiability of the certificate, the instrument's terms should be construed under general contract legal principles. It concluded that the provision was valid and made the certificate non-negotiable.

■■■ We find all of these authorities persuasive. We also note the well-established principle in Texas that the rules of construction governing contracts are applicable to bills and notes, and a bill or note must be construed as a whole so as to give effect, if possible, to every part of such instrument. *Greiner v. Rogers,* 450 S.W.2d 665, 668 (Tex.Civ.App.—Eastland 1969, no writ). Moreover, memoranda on a bill or note placed thereon contemporaneously with the intention that they become a part of the instrument become a substantive part thereof. *Weaver v. Weaver,* 171 S.W.2d 898, 900 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.).

■■■ We conclude that an agreement between the parties that a certificate of deposit be non-negotiable, when clearly and unambiguously shown on the instrument, is valid and effective. The certificate of deposit here in question is clearly marked in two places as non-negotiable. We hold this sufficient to make the certificate, by its terms, non-negotiable. Therefore, neither the Code provisions nor the footnote statement from *First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co.,* 524 S.W.2d at 599, cited by Wren are dispositive of this appeal.

The Bank argues that by specific provision of Tex.Rev.Civ.Stat.Ann. art. 342–706 (Vernon 1973) it was entitled to pay either Wren or Dewey. The statute provides:

A bank may pay a *present or future* deposit, payable to or on the order of ... any one of two or more persons ... to any one *of such joint depositors* (before or after the death of the other joint depositor or depositors).... [Emphasis added.]

Although the term "joint depositors" is not separately expressly defined in the article, the Bank ingeniously reasons that the use of the word "such" as a modifier to the phrase "joint depositors" expresses the concept that the term "joint depositor" has, by implication, been earlier defined in the article. It argues that, of necessity, the reference must be to "any one of two or more persons" to which a "present or future deposit" may be paid. Therefore, it continues, since the certificate was payable to Wren or Dewey, they were joint depositors and the Bank would be protected by paying either one. We disagree with the Bank's conclusion.

■ Initially, even assuming, arguendo, that the Bank's interpretation of the statute is correct, this record does not support the conclusion that Wren and Dewey were "joint depositors." On its face, the certificate states that Wren *or* Dewey deposited the funds with the Bank. This disjunctive reference to the depositors contradicts their classification as joint depositors. The undisputed summary judgment evidence establishes that the deposit was in fact made by Wren. That being the case, the Bank's argument is fatally flawed in its inception and the statute would not per se authorize the payment to Dewey. Furthermore, this certificate expressly recites that it is payable "upon the return of this certificate properly endorsed." This additional agreement as to possession and endorsement would, under the facts here existent, make article 342–706 inapplicable to this case.

The Bank asserts that the provision for return and endorsement was for its protection and could be unilaterally waived by it.

In support of this proposition, it cites a statement in *First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co.*, 524 S.W.2d at 530. The Court referred to a provision in the certificate of deposit there involved that provided that the Bank "agrees to pay to depositor upon presentation of this certificate." Commenting upon this phrase, the Court said, "Such presentation is necessary for the bank's protection because lack of possession would indicate that the named owner of the certificate of deposit may have transferred it to a third party." We find nothing in that statement that would indicate any holding that such a provision might not also be for the protection of the holder of the note; indeed, that question was not before the court. It certainly does not support the proposition that in a situation such as this, the bank could unilaterally and without notice waive the provision.

As additional authority, the Bank cites *Benavides v. Laredo National Bank*, 91 S.W.2d 372 (Tex.Civ.App.—Eastland 1936, no writ). In that case, in reference to a passbook savings account and without citation of authority, the court stated:

The provision for presenting the passbook on depositing or withdrawing money was one, we think, which the bank could waive, at least in the absence of any statute giving it a contrary effect, being evidently a provision for its benefit. *Even that made "the possession of the pass book the test of ownership." The father had possession of the pass book when he drew out the money.* [Emphasis added.]

*Id.* at 374. Since the individual actually had possession of the passbook in question, any holding or implication that a possessory requirement was for the unilateral benefit of the bank and could be waived by it was clearly dicta and unnecessary to the resolution of the case, and would not constitute reliable authority supporting the Bank's proposition here advanced. We also note with interest the Court's statement that such a phrase made the actual

possession of the passbook "the test of ownership."

Applying the rules of construction set out in *Greiner v. Rogers* and *Weaver v. Weaver*, we think a much more reasonable construction of the instrument is that the requirement of possession and endorsement of the certificate was a reasonable one, for the protection of *both* parties, and one upon which both parties could rely. Indeed, adherence to its provisions would have prevented this lawsuit from arising. This construction gives effect to a provision of the instrument, and we think it effectuates the intent of the parties. To hold otherwise would lead to an inequitable result.

By retaining possession, Wren had done all that could reasonably be expected of her. The Bank, on the other hand, could easily have protected itself by insisting upon delivery of possession or a waiver and release by both Wren and Dewey. When it chose to release the proceeds upon an indemnity agreement executed by Dewey alone, it did so at its peril.

In summary, the Bank's points of error are overruled and the judgment of the trial court affirmed.