Opinion issued March 27, 2003














In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00739-CV




WILLIAM GRANT DORSETT, Appellant

V.

NANCY SWANSON CROSS, Appellee




On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 671986




O P I N I O N

          In this breach of contract case, Nancy Swanson Cross, plaintiff/appellee, sued
William Grant Dorsett, defendant/appellant, to collect on a promissory note for the
payment of securities, payable on demand, in the principal amount of $56,000 (the
Note). On appeal, Dorsett challenges the sufficiency of the evidence to support the
jury’s findings and contends certain testimony was improperly admitted. We affirm.
Factual & Procedural Background
          This is a suit by Cross to collect the price of her stock pursuant to the Note
executed in her favor by Dorsett. The Note was expressly made subject to the terms
of an Agreement for Purchase and Sale of Stock dated July 1, 1993 (the Stock Sale
Agreement). The Stock Sale Agreement was executed by Cross and three other
persons as Sellers and by Dorsett as Purchaser of stock in Accent Services, Inc. (the
Corporation). 
          Under the terms of the Stock Sale Agreement, the Sellers promised to transfer
the stock into Dorsett’s name, to deliver the stock certificates into escrow, and to
make certain documents of the Corporation set out in “Exhibit A” to the Stock Sale
Agreement available for inspection by Dorsett so that he could perform due diligence. 
Dorsett promised to execute a promissory note in favor of each Seller for the purchase
price of the stock and to deposit $10,000 into escrow as earnest money upon delivery
of the stock to Sellers’ attorney, to give written notice of receipt of the documents
within three business days of their receipt, and to perform due diligence. The Stock
Sale Agreement gave Dorsett 30 days after receipt of the documents to close the stock
purchase transaction. If he elected not to close the transaction, he promised to deliver
to the Sellers his written communication of his desire to rescind, at which point he
would forfeit his $10,000 earnest money. If he elected to close, he promised to pay
20% cash down to each Seller and to substitute installment notes for the balance of
the purchase price in place of the promissory notes executed in favor of the Sellers
at the initial Closing.
          Following the transfer of stock into Dorsett’s name, the delivery of the stock
to Sellers’ attorney, and Dorsett’s deposit of the $10,000 in earnest money into
escrow, the Sellers made the documents listed in Exhibit “A” to the Stock Sale
Agreement available for Dorset’s due diligence inspection. Dorsett, however, failed
to acknowledge their receipt, as required by the Stock Sale Agreement. He also
refused to review the documents, and did not complete his due diligence. He neither
closed the transaction within 30 days of receipt of the documents nor sent written
notice of rescission to the Sellers; nor did he pay for the stock. After Cross made
demand on Dorsett for payment for her stock pursuant to the Note, Dorsett announced
that he was exercising his right of rescission. Cross filed this suit for recovery of the
purchase price.
          The trial court charged the jury to find: (a) whether Dorsett had failed to
comply with the terms of the Note; and (b) if so, whether his failure to comply was
excused by Cross’s previous failure to comply with a material obligation of the Note
or with the Stock Sale Agreement. The jury found that Dorsett failed to comply with
the Note (Question No. 1) and that his lack of compliance with the Note was not
excused by Cross’s failure to comply with the Note (Question No. 2) or with the
Stock Sale Agreement (Question No. 3). In determining the amount of damages, the
jury was instructed to consider only the unpaid principal balance of the Note; it
assessed damages in the amount of $56,000. The trial court entered judgment on the
verdict.
Sufficiency of the Evidence
          Dorsett argues in his first and second points of error that (1) there is no
evidence to support the jury’s finding that he failed to comply with the terms of the
$56,000 Note because the Note was expressly made subject to the provisions of the
Stock Sale Agreement; the Stock Sale Agreement provided that he would conduct a
due diligence analysis of documents reflecting the Corporation’s financial condition;
the Stock Sale Agreement did not impose any deadline on him for completion of his
due diligence; and, because he never completed the required due diligence, there is
no evidence he failed to comply with the Note; and (2) the jury’s finding that he
failed to comply with the terms of the Note does not constitute a basis for entry of
judgment against him because the Stock Sale Agreement expressly limited his
liability, if he did not close the stock purchase transaction, to the $10,000 earnest
money he deposited with the Sellers. We consider these issues together.
          Standard of Review
          We may consider only the evidence and inferences that tend to support the
jury’s finding and must disregard all evidence and inferences to the contrary. 
Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). Thus,
we must examine the record only to find whether there is evidence that supports the
jury’s finding. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).
          In deciding whether there is legally sufficient evidence to support the jury’s
finding on the issue of whether Dorsett failed to comply with the terms of the Note,
we must first ascertain Dorsett’s contractual obligations under that instrument. When
interpreting a contract to determine the intention of the parties, all writings pertaining
to the same transaction will be construed together. See DeWitt County Electric Co-op, Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999). Because the Note expressly states
that it is executed pursuant to the parties’ Stock Sale Agreement, we must examine
its provisions in the light of that Stock Sale Agreement. Fort Worth Ind. Sch. Dist.
v. Fort Worth, 22 S.W.3d 831, 840-42 (Tex. 2000).
 

          Breach of Contract and Excuse of Performance
          A promissory note is nothing more than a contract evincing an obligation to
pay money. Amarillo Nat’l Bank v. Dilday, 693 S.W.2d 38, 41 (Tex. App.—Amarillo
1985, no writ). As such, the construction of its terms is controlled by the rules
generally applicable to interpreting contracts. Id. 
          The elements of a breach of contract action are (1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages sustained by the plaintiff as a result of the
breach. Frost Nat’l Bank v. Burge, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th
Dist.] 2000, no pet.). A breach occurs when a party fails or refuses to do something
he has promised to do. Townewest Homeowners Ass’n, Inc. v. Warner
Communication Inc., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1990,
no writ); Intermedics, Inc. v. Grady, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st
Dist.] 1984, writ ref’d n.r.e.). A cause of action for breach of a promise to pay arises
when a demand for payment has been made and refused. Intermedics, 683 S.W.2d
at 845.
          One party’s promise conditioned on satisfaction with another party’s
performance of a condition generally requires performance of the condition that is
satisfactory in the exercise of honest judgment; the decision on the question of
satisfactory performance must be made in good faith. Atomic Fuel Extraction Corp.
v. Slick’s Estate, 386 S.W.2d 180, 185 (Tex. Civ. App.—San Antonio 1964, writ ref’d
n.r.e.). Prevention of performance by one party excuses performance by the other
party, both of conditions precedent to performance and of promise. O’Shea v. Int’l
Bus. Mach. Corp., 578 S.W.2d 844, 846 (Tex. Civ. App.—Houston [1st Dist.] 1979,
writ ref’d n.r.e.); Atomic Fuel Extraction Corp., 386 S.W.2d at 186. When the
obligation of a party to a contract depends upon a certain condition’s being
performed, and the fulfillment of the condition is prevented by the act of the other
party, the condition is considered fulfilled. Houston County v. Leo L. Landauer &
Assocs., Inc., 424 S.W.2d 458, 464 (Tex. Civ. App.—Tyler 1968, writ ref’d n.r.e.).
          When a contract has been substantially performed and an attempt to complete
performance is refused, the refusal excuses any further attempt to perform by the
party offering performance and entitles that party to recover under the contract.
Longview Constr. & Dev., Inc. v. Loggins Constr. Co., 523 S.W.2d 771, 779 (Tex.
Civ. App.—Tyler 1975, writ dism’d by agreement); Cox v. KTM Drilling, Inc., 395
S.W.2d 851, 853 (Tex. Civ. App.—Amarillo 1965, writ ref’d n.r.e.). A party who is
in default may not complain of the recovery of damages by the other party, nor set up
a subsequent default by the other party, nor urge such a subsequent default where the
obligation of performance by one party presupposes the doing of some act by the
other party which he fails or refuses to do. Moore County Carbon Co. v. Whitten, 140
S.W.2d 880, 883 (Tex. Civ. App.—Amarillo 1940, writ dism’d judgm’t cor.).
          Conditions Precedent to Final Closing 
          Under the essential terms of the Stock Sale Agreement, several events had to
occur before the consummation of the stock purchase transaction, hence before the
Note became due and payable. These conditional events were as follows:
          First, upon execution of the Stock Purchase Agreement, two things had to be
done, as provided in paragraph 3(a) of the Stock Sale Agreement: (1) the Sellers had
to deliver their stock to their attorney to be held by him in escrow until all stipulated
amounts and notes have been paid; and (2) the Purchaser had to deliver his executed
demand note to each of the Sellers. The Sellers agreed not to make demand for
payment under the notes until after Purchaser completed his due diligence as defined
in the Stock Sale Agreement.
          Second, the Purchaser was required to complete his “due diligence” as defined
in paragraph 5 the Stock Purchase Agreement. Paragraph 5 provided that the
Purchaser had to notify the corporate secretary that he was the owner of the stock
within three business days after the delivery of the stock to the Sellers’ attorney; and
he had to make demand that the stock be transferred to his name and that he be
allowed to inspect the documents described in Exhibit A. Within three business days
after being furnished the listed documents, the Purchaser had to give written notice
of that fact to the Seller’s attorney. The Purchaser had the right to rescind the
transaction by delivering written notice to the Sellers. If he elected to rescind, his
earnest money would have been forfeited. If, however, the Purchaser elected to close
after making his due diligence examination, the earnest money would have been
credited against his cash down payment at closing. The Purchaser had 30 days after
receipt of the requested documents to close the transaction.
          Third, under paragraph 3(b) of the Stock Sale Agreement, 30 days after
Purchaser completed his due diligence as defined in the Stock Sale Agreement,
Purchaser was required to pay a stipulated 20% cash down payment to each Seller and
execute installment notes to be substituted for the original demand notes. The
substitution of notes and the cash payment was to occur within 30 days after
Purchaser conducted his due diligence of the financial records described in Exhibit
“A.”
          In addition, paragraph 6 of the Stock Sale Agreement provided for security for
performance and paragraph 7 acknowledged receipt of the earnest money from the
Purchaser and provided that the earnest money would be forfeited “if Purchaser does
not close this transaction under any circumstances.”

          Performance of Conditions Precedent
          The undisputed evidence shows that the parties completed the conditions set
out in paragraph 3(a), but they did not complete the rest. That is, the Sellers did
deliver the stock to their attorney, and Dorsett did execute his demand notes and make
a demand on the corporate secretary for the listed documents. The evidence is also
undisputed that Dorsett did not notify the Sellers that he had received the requested
documents.
          There was evidence from which the jury reasonably could have inferred that
Cross and the other Sellers produced the documents requested by Dorsett for his due
diligence inspection but that he refused to review them. That is, there is evidence
from which the jury could have concluded that Dorsett failed to fulfill his obligation
to perform due diligence, which was a condition precedent to closing the stock
purchase transaction. Moreover, there is evidence from which the jury could have
concluded that Dorsett failed either to exercise his right to rescind or to close the
stock transaction within 30 days after receipt of the documents proffered by the
Sellers, as required by paragraph 5 of the Stock Sale Agreement. Based on this
evidence, and the fact that Dorsett did not notify Cross of his intent to rescind until
after she sought payment of the Note, the jury could reasonably have decided that
Dorsett’s failure to complete his due diligence examination was not due to any fault
on the part of Cross or the other Sellers. Although there is evidence that Dorsett held
himself out to be the owner of the stock, it is undisputed that he did not pay the cash
down payment or execute the installment notes in place of the original notes.
          Dorsett, however, contends (1) the Stock Sale Agreement does not specify any
time limit within which he was required to give Cross notice of his intent to rescind;
(2) the Stock Sale Agreement accorded him an unrestricted right to rescind if the
stock purchase transaction failed to close “under any circumstances,” on penalty of
forfeiting only the earnest money; and (3) because the transaction did not close, he
was entitled to rescind, and the Sellers’ sole remedy was to retain the earnest money
deposited with their attorney.
          Dorsett’s interpretation of the Stock Sale Agreement ignores both the plain
language of the Stock Sale Agreement and the legal effect of his failure to perform
the conditions precedent to Cross’s right to demand payment for her stock under the
Note. Dorsett relies on paragraph 5 of the Stock Sale Agreement, providing for “Due
Diligence,” which states in relevant part:
After the records described in Exhibit “A” have been furnished to Purchaser
by the Corporation, Purchaser shall give written notice of such fact to Sellers’
attorney within three (3) business days therefrom. Purchaser shall have the
right to rescind the transaction by delivering his written communication to
Sellers of his desire to rescind this Agreement. The Earnest Money shall be
forfeited by Purchaser in case of his decision to rescind; if, however, Purchaser
desires to close the transaction after making such inspection, the Earnest
Money shall be credited to the cash amount Purchaser paid at Closing. 
Purchaser shall have thirty (30) days to close the transaction after receipt of
the documents listed in Exhibit “A.”

Stock Sale Agreement, paragraph 5 (emphasis added). He also relies on paragraph 7,
which provides:
Sellers acknowledge receipt from Purchaser of the sum of [$10,000] to
be placed in escrow with [Sellers’ attorney] to bind this Agreement. The
Earnest Money shall be forfeited if Purchaser does not close this transaction
under any circumstances.

Stock Sale Agreement, paragraph 7.
          The rules of contract interpretation require us to give the language in an
agreement its plain grammatical meaning unless to do so would defeat the intent of
the parties. DeWitt County Electric Co-op, 1 S.W.3d at 101. When the provisions
of a contract appear to conflict, they should be harmonized, if possible, to reflect the
intentions of the parties. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex.
1983). To achieve this objective, courts should examine and consider the entire
contract to harmonize and give effect to all its provisions, so that none will be
rendered meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). In
harmonizing contractual provisions, terms stated earlier in an agreement must be
favored over subsequent terms. Id.
          The Stock Sale Agreement did not give Dorsett an unrestricted right to rescind
at any time, but expressly limited that right to the 30 days following his receipt of the
documents listed in Exhibit A, during which time he was obligated to complete his
due diligence and either rescind or close the transaction. Instead, he chose not to
complete his due diligence, not to rescind, and not to close the transaction. In other
words, he repudiated the contract. A party to a contract may not set up his own
breach to relieve himself of his contractual obligations; nor may he set up his breach
as the basis for rescission of the contract or as the ground for his own recovery. 
Presley v. Cooper, 278 S.W.3d 237, 241 (Tex. Civ. App.—Amarillo), rev’d on other
grounds, 284 S.W.2d 138, 155 Tex. 168 (Tex. 1955).
          The only way to find that Dorsett did not lose his right to rescind by failing to
complete his due diligence and either rescind or close within 30 days after receipt of
the documents proffered by the Sellers is to find that the language in paragraph 7 of
the Stock Sale Agreement, which provides that “[t]he Earnest Money shall be
forfeited if Purchaser does not close this transaction under any circumstances,”
permits untimely rescission—even after failure to perform and demand for payment
by the performing party—and limits the Sellers’ recovery to the Earnest Money. 
However, the foregoing principles of contract interpretation prohibit us from reading
paragraph 7 of the Stock Sale Agreement in such a way, since it renders meaningless
the language concerning the rights and obligations of the parties set out earlier in
paragraph 5.
          Paragraph 7 of the Stock Sale Agreement, providing that Dorsett could rescind 
if the stock purchase transaction did not close “for any reason,” should be read as
limited by the provision in paragraph 5 that Dorsett had 30 days from delivery of the
documents listed in Exhibit A to complete his due diligence and elect either to rescind
or to close the stock purchase. If the stock purchase transaction failed to close “for
any reason”—including Dorsett’s prior breach or that of the Sellers—Dorsett
forfeited the $10,000. This forfeiture does not, however, preclude actions by the
Sellers to collect on the Notes under ordinary principles of contract law in the event
of Dorsett’s repudiation of the contract. 
          Because the closing of the stock sale transaction was conditioned on the
completion of Dorsett’s due diligence, Dorsett was obligated to complete his due
diligence in good faith, not to frustrate its performance. See Atomic Fuel Extraction
Corp., 386 S.W.2d at 185. Dorsett’s refusal to review the documents proffered to
him, to complete his due diligence, and either to rescind or to close the stock purchase
transaction within 30 days after delivery of the documents constitutes repudiation of
the contract, excusing any further attempt by Cross to perform, causing the due
diligence and the stock sale to count as having been completed, and entitling Cross
to seek recovery of the stock price pursuant to the Note. See Longview Constr. &
Dev., 523 S.W.2d at 779; Cox, 395 S.W.2d at 853; Atomic Fuel Extraction, 386
S.W.2d at 185.
          Because Dorsett defaulted on the Note by failing to fulfill his promise to
conduct due diligence in good faith within 30 days of his receipt of the documents
and by frustrating Cross’s further performance, he is not entitled to urge the failure
to close the stock transaction (which he had frustrated) as grounds for his retaining
the right to rescind; nor is he entitled to complain of the recovery of damages by
Cross. See Moore County Carbon Co., 140 S.W.2d at 883; see also Hodges v. Braun,
654 S.W.2d 542, 545 (Tex. App.—Dallas 1983, writ ref’d n.r.e.); Intermedics, Inc.,
683 S.W.2d at 845; Leo L. Landauer & Assocs., 424 S.W.2d at 464.
          We overrule Dorsett’s first two points of error.
Cross’s Attorney’s Testimony
          In point of error three, Dorsett complains that Cross’s attorney, Harry Herzog,
improperly testified about and commented on an alleged admission by Dorsett that
he bought Cross’s stock.
          Dorsett asserts that Herzog was an unidentified fact witness who was permitted
to testify over his objection. He also asserts that Herzog’s testimony was calculated
to cause and probably did cause the rendition of an improper judgment. Herzog was
identified as both a fact witness and an expert witness by Cross in her “Responses to
the First Set of Interrogatories of William Grant Dorsett,” as noted in the First
Supplemental Clerk’s Record. Therefore, we do not agree with appellant’s complaint
that Herzog was an unidentified fact witness. 
          Notwithstanding his prior identification as a witness, a lawyer shall not accept
or continue employment as an advocate if he knows or believes that he may be a
witness necessary to establish an essential fact on behalf of his client. See Tex.
Disciplinary R. Prof’l Conduct 3.08, reprinted in Tex. Gov’t Code Ann., tit. 2,
subtit. G app. A (Vernon 1998) (Tex. State Bar R. art X, § 9). Although there are
five exceptions, not all of Herzog’s testimony falls within the exceptions. See id. at
3.08(a)(1) - (5). However, to warrant reversal on appeal, the complaining party must
show that the trial court’s ruling harmed him or caused an improper judgment to be
rendered. See Warrilow v. Norrell, 791 S.W.2d 515, 521 (Tex. App.—Corpus Christi
1989, writ denied). Dorsett asserts that Herzog’s testimony harmed him in that it was
the only evidence that Dorsett admitted to buying Cross’s stock.
          We do not agree with Dorsett’s contention that Herzog’s testimony was the
only evidence that Dorsett admitted to buying Cross’s stock. Other evidence was
presented from which the jury could have reasonably found that Dorsett owned the
stock, such as appellant’s letter to Dan Swanson, in which Dorsett asked Swanson to
try to sell the stock Dorsett owned. Additionally, there was sufficient evidence
presented and testimony from other witnesses, as discussed above, for the jury to
make its decision. Moreover, Dorsett’s holding himself out to be the owner of the
stock is not material to our disposition of this case.
          We overrule appellant’s third point of error.
          We affirm the judgment of the trial court.
 
 
                                                                        /s/ Evelyn V. Keyes
                                                                        Justice


Panel consists of Justices Hedges, Keyes, and Evans.




Justice Evans dissenting.